# ANNAPOLIS PUBLIC UTILITIES COMPANY, A
## BODY CORPORATE,

*vs.*

## JOHN F. MARTIN.

*Gas companies: failure of consumers to pay; cutting off supply.*

Where a consumer brings suit against a gas company for damages for an alleged wrongful shutting off of the supply of gas, and the defense is that the supply was shut off only after due and repeated notice, and because of the failure of the consumer to pay for the gas consumed by him, *it was held,* that the burden of proof was upon the plaintiff to sustain the allegations of the declaration that the shutting off of the supply was wrongful and without just cause.                        pp. 395-396

*Decided November 15th, 1917.*

Appeal from the Circuit Court for Anne Arundel County. (BRASHEARS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS and URNER, JJ.

*George Weems Williams* (with whom were *Marbury, Gosnell & Williams* and *L. Vernon Miller* on the brief), for the appellant.

*Eugene P. Childs* and *James M. Munroe,* for the appellee.

BURKE, J., delivered the opinion of the Court.

The appeal in this case was taken by the Annapolis Public Utilities Company, a corporation, from a judgment entered against it in the Circuit Court for Anne Arundel County at the suit of John F. Martin, who conducted a restaurant at No. 6 West street, in Annapolis. The declaration contained two counts. The first count alleged that upon the application of the plaintiff the defendant installed a gas meter and made connections from its service pipes to the building occupied by the plaintiff, and furnished plaintiff gas used for cooking and illuminating purposes which the defendant continued to do until the 10th day of April, 1916, "when said defendant or its agents did maliciously, wrongfully, and without just cause, and with intent of injuring the plaintiff's business cut off said gas supply, which deprived the plaintiff of light and heat for cooking purposes." This count alleged that the application for gas was made by the plaintiff to the defendant on the 23rd day of November, 1915, for furnishing gas to be used by him in the premises occupied by him *as a tenant.* The second count set out the application in which it appears that the plaintiff agreed to hold himself "responsible for *all gas consumed* on said premises until forty-eight hours after notice has been duly given at the office of the company to discontinue the supply." The count then alleged that the defendant accepted the application, installed a gas meter, made connection with the service pipe, and furnished gas to the premises for cooking and lighting, and "that said defendant company did continue to furnish to the said plaintiff the supply of gas until the tenth day of April, 1916, when said defendant company, through its agents, did enter upon said premises, and did wrongfully and maliciously and without just cause cut off the supply of gas, and refused and does still refuse to furnish the same.

That by reason of the wrongful act of the defendant company the plaintiff has suffered gross indignities and mortifications, as well as having been put to great expense and trouble." There are four exceptions in the record reserved

by the defendant during the course of the trial,—three relate to rulings on evidence, and one to the action of the Court on the prayers submitted at the close of the case.

As we have reached the conclusion that the defendant's first and second prayers should have been granted the other questions raised need not be considered. These prayers are here transcribed:

1. "The defendant prays the Court to instruct the jury that no legally sufficient evidence has been offered in this case tending to prove that the defendant violated any of the obligations it owed to the plaintiff, and therefore, the verdict of the jury must be for the defendant, upon the issues joined in the pleadings."

2. "The defendant prays the Court to instruct the jury that inasmuch as it appears from the uncontradicted evidence that on April 7th, 1916, the plaintiff owed the defendant for gas furnished by the defendant on the premises of the plaintiff, and was on that date notified of the amount alleged to be due, and requested to pay said amount, and that the plaintiff was further notified that if he did not pay said amount on or before noon of April 10th, 1916, the gas meter would be removed, and that the said plaintiff failed or refused to pay said amount so due on or before noon of April 10th, 1916, and that thereupon in pursuance of said notice said gas meter was removed without any unnecessary force, the verdict of the jury must be for the defendant."

We held in *Carter* v. *The Suburban Water Company,* decided June 28th, 1917 (131 Md. 91), that a Public Service Water Company has a right to cut off a consumer's water supply for non-payment of water rents. In the case before us the burden was upon the plaintiff to offer evidence legally sufficient to show that he was not indebted to the defendant for gas supplied to the premises at the time the supply was shut off, for unless such evidence was offered there was a failure of proof to support the allegation of the declaration that the supply was wrongfully and without just cause shut

off. The undisputed facts, which are few and simple, in our opinion are legally insufficient to support the plaintiff's case.

The meter installed and used by the plaintiff was known as a slot meter. It consisted of two parts,—one part measured and recorded the gas consumed, and the other part consisted of a receptacle in which quarters were placed in order to start and maintain the flow of gas. If the coin was not placed in the slot no gas would be furnished, and if the meter was in proper, working order, the amount of gas consumed and the amount of cash in the slot would correspond, that is to say, there would be sufficient money in the slot to pay for the gas consumed as recorded by the meter. Payment for gas consumed was to be made monthly, and collections were made by a collector of the company. The meter used had been inspected, tested, and approved by the Public Service Commission of Maryland before it was installed in the plaintiff's premises, and immediately after it was removed it was again tested by the defendant and was found to be substantially correct. The only inaccuracy found was that it was three per cent. fast, and on this account the plaintiff was entitled to a credit on his bill of sixty-nine cents which was allowed by the company. The amount due for gas consumed for January, 1916, was $20.50; for February, $24.50, but when the defendant's agent went to collect for gas consumed from March 6th to April 6th, 1916, only $11.00 was found in the slot attached to the meter. This cash receptacle was locked, and one having a key could open it, and the undisputed evidence is that a child by means of a wire could extract the money.

On the 6th of April, 1916, Henry Boteler, the defendant's collector, went to the plaintiff's place to make the collection. He unlocked the meter and in the presence of Miss Stevens, an employee of the plaintiff, a boy and the cook, counted the quarters on a table and found that they amounted to $11.00. He was surprised at the discrepancy between that amount and the amounts collected in the previous months and asked Miss Stevens if they were not doing a good business and she

said, yes.  Miss Stevens testified that she was in the dining
room and saw Boteler come through with the meter, that he
counted the money in the dining-room, and she said it looked
like a smaller amount than had been taken out in previous
months.  Boteler notified H. T. Connolly, the defendant's
superintendent of this discrepancy, and he sent one of his
men around and removed the meter and installed another.
After the meter was tested and examined it was found that
it showed a consumption of gas of 19,000 cubic feet for
March which according to the fixed rates for Annapolis
amounted to $23.75.

The defendant then wrote the plaintiff the following let-
ter:

"April 7, 1916.

Mr. John F. Martin,
    6 West Street,
        Annapolis, Md.
Dear Sir:—

The gas meter, this Companies Number 1030, Public
Service Commission Number 64215B, located on the
premises No. 6 West St., occupied by you as a lunch
room, showed on March 6, 1916, a reading namely
652, and on April 7th, 1916, it showed a reading of
842, consequently gas consumption of 19,000 cubic feet,
at $1.25, equals $23.75.  Our collector on opening the
above meter discovered that there was only $11.00 in
money-box.  After meter was removed there was
twenty-five cents in the money-box.

The meter, after being removed, was tested by this
company and found to be three per cent fast.  We
have credited your account sixty-nine cents on account
of meter being this fast.  With the credits above men-
tioned you are indebted to this company to the extent
of $11.81.  Failure on your part before Monday, April
10th, 12 o'clock noon, we will be forced to discontinue
your supply of gas.

Attached please find duplicate of statement I handed you personally today.

Respectfully,

ANNAPOLIS PUBLIC UTILITIES COPMANY,

(Signed)   H. T. CONNOLLY,

Supt of Power."

Martin paid no attention to this letter and the meter was removed on the 10th day of April without any unnecessary force or any disturbance.

We think the evidence is perfectly clear that the plaintiff was indebted to the defendant in the sum of $11.81 for gas consumed on his premises at the time the meter was removed. Assuming the admissibility of the testimony embraced in the first exception, and giving the plaintiff credit for all the money claimed to have been put in the slot, the evidence offered on his behalf showed that he had not paid for the gas consumed at the time the meter was taken out. The contention that the defendant should have applied the $20.00 deposited on the Electric Light contract to the Gas bill can not be sustained. The contracts for electricity (upon which the $20.00 was deposited), and gas were separate and distinct contracts and made at different times. This deposit was applied by the defendant to bills for electric light which it claimed were due by the plaintiff, and it offered evidence tending strongly to support its claim. But we are not required to decide that question but it is obvious that the defendant, without the consent of the plaintiff, had no right to divert the sum which was deposited under the terms of the electric light contract and apply it to an indebtedness which had accrued under a contract for gas made some months later. As there was no evidence offered legally sufficient to support the plaintiff's case, the defendant's first and second prayers should have been granted, and a verdict directed for the defendant.

*Judgment reversed, without awarding a new trial, with costs to the appellant.*