Amthohy M. Livoti, J.
TMs action was tried before this court in equity. The prayer for relief in the complaint states that plaintiff demands judgment “ that the defendant, his agents and servants and employees and any and all persons acting in conjunction with any of them be enjoined and restrained from refusing to furnish gas to plaintiff at the above-mentioned premises until such time as the matter may come before a Court of competent jurisdiction and the issues thereupon resolved ” and “for an order restraining and enjoining the defendant from refusing to supply gas to plaintiff during the pendency of this action ’ ’.
The defendant interposed two separate and distinct counterclaims against the plaintiff. The first counterclaim is for the alleged sum of $82.67 which is owing the defendant from the plaintiff for gas conveyed to and consumed at premises at No. 162-08 112th Eoad, Jamaica, New York during the period between March, 1955 to April, 1959 inclusive, billed under account No. 12725/17202 in accordance with the defendant’s rate schedule, no part of which alleged sum has been paid by the plaintiff, although duly demanded; the second counterclaim is for the alleged sum of $49.55 which is owing the defendant from the plaintiff for gas conveyed to and consumed at premises known as No. 107-35 170th Street, Jamaica, New York during the period between June, 1955 to December, 1959 inclusive, billed under account No. 11830/21322 in accordance with defendant’s rate schedule, no part of which alleged sum has been paid by the plaintiff, although duly demanded.
The complaint alleges, in substance and among other things, that the defendant is a domestic corporation supplying gas to residents at Jamaica, New York. The plaintiff is a resident and householder at No. 107-35 170th Street, Jamaica, New York, and that on the 28th day of December, 1959 plaintiff was one of defendant’s customers, receiving gas services at premises No. 107-35 170th Street, Jamaica, New York. That on or about the said date, without plaintiff’s consent, the defendant discontinued the service at said premises and plaintiff claims that it was an unlawful proceeding to discontinue such service without proper notice as prescribed by statute. The plaintiff further alleges that the bills rendered by the defendant were erroneous and that the plaintiff has sought vainly to obtain a corrected bill from the defendant. That due to the arbitrary act of the defendant in shutting off the supply of gas, the plaintiff and his tenants suffered grievous inconvenience as to both comfort and health and would continue to so suffer if *1017 defendant is not enjoined from continuing to deny plaintiff gas service.
The plaintiff’s uncontradicted testimony stated that from 1955 to September, 1959 he resided at No. 107-35 170th Street, Queens, and that he received gas service from the defendant at said address under account No. 11830/21322 for which he paid with the exception of $2.38. He further testified that the next invoice he received from defendant indicated an arrearage of $100.25 of which he had no knowledge and he immediately filed a formal complaint with the defendant, in answer to which he did not receive a proper explanation. He further testified that his gas service at his residence at premises No. 107-35 170th Street, Queens, was cut off from street on December 28, 1959 although he was never served with the statutory notice of discontinuance of service as required by section 15 of the Transportation Corporations Law. Plaintiff’s testimony in this respect, as cross-examined by defendant’s attorney, is as follows:
11 Q. Prior to the commencement of this action, Mr. Brewer, did you owe for the premises at 170 Street $49.55 for gas consumed? A. Not that I am aware of, sir.
“ Q. Are you aware if you owed any money for gas consumed at 170 Street? A. Yes, sir. According to the bills, it seemed I owed $2.38.
“ The Court: $2.38?
“ The Witness: Yes, sir. That is what that last bill seems to show in arrears: $2.38.”
The plaintiff further testified that he was the owner of premises at No. 162-08 112th Road, Jamaica, during the period of 1955 to 1959 and gave the following testimony in this respect, as cross-examined by the defendant’s attorney, as follows:
“ Q. Who resided at the 112 Road address during 1955? A. Two tenants.
‘1 Q. Did any relation of yours reside at the 112 Road address, Mr. Brewer? A. Yes, sir.
“ Q. Would you please tell us who? A. A cousin.
# # #
“ Q. Would that have been Mrs. M. Brewer? A. No, sir.
“ Q. Did Mrs. M. Brewer ever live at that address? A. No, sir.
“ Q. Did a Mr. George Brewer ever live at that address? A. Yes, sir.
“ Q. Who is Mr. George Brewer? A. Cousin.
*1018 “ Q. In 1955, Mr. Brewer, did you ever request the gas company either by phone or by letter to service gas to the 112 Street address ? # * * A. No, sir.
“ Q. Did you ever make such an application in 1957 ? A. No, sir.
“ Q. No doubt about it; never did? A. Never to service.
“ Q. Didn’t you request that the gas company service gas to the 112 Road address and that bills be rendered to you for that service at 170 Street? A. No. sir.”
The plaintiff is inadequately contradicted by the strictly hearsay evidence of Mr. Keller, an employee of the defendant who had no personal knowledge of the account, except that some person in his office reported to him the figure of the plaintiff’s account with defendant. He further testified that the said account did not contain any signature of plaintiff, nor was any application for gas service executed by plaintiff, nor did he know of his own knowledge where the plaintiff resided; that the defendant’s final bill of gas service consumed at No. 162-08 112th Street was sent on May 13, 1959, to the premises No. 162-08 112th Street in the amount of $112.80, and thereafter, without plaintiff’s consent or notice, defendant transferred the balance due to the defendant for gas service consumed at No. 162-08 112th Street to plaintiff’s account at No. 107-35 170th Street where plaintiff resided.
Mr. Keller’s testimony in this respect, as cross-examined by plaintiff’s attorney, is as follows:
“ Q. Let me ask you this: In this specific case, did you discontinue it or give notice of discontinuance at the place where the gas was consumed? A. No, because there was a request made to change the name from M. Brewer to G-uy R. Brewer.
“ Q. From whom did that request come, if you know? A. According to our records in here, we got a telephone call from Mrs. M. Brewer stating that her husband was going to be responsible for the bills. We sent a field man out to the field to investigate it, to see whether Mr. Brewer would assume responsibility for the bill. And according to the application made, Mr. Brewer agreed to assume responsibility for the gas at 112 Road.
“ Q. Application made by whom?
“ The Court: Does that contain the signature of Gruy Brewer or the signature of anybody else ?
“ The Witness: No, we don’t require signatures.”
It is well settled that where a gas company cuts off an existing service of a consumer, the burden is on the gas company to justify its act. (Levine v. Brooklyn Union Gas Co., 146 App. *1019 Div. 464; Hollander v. Westchester Light. Co., 79 Misc. 646; Schmitt v. Edison Elec. Illuminating Co., 58 Misc. 19, affd. 125 App. Div. 909.)
The defendant is a gas company organized in 1895 under the Transportation Corporations Law (Matter of Brooklyn Union Gas Co. v. Cashmore, 21 Misc 2d 126) and by its franchise as such public service corporation, its principal obligation is to serve the public, and as such, the defendant is not permitted to choose its customers or to discriminate between customers by extending unreasonable conditions and preferences to some, but must serve all on the basis of fairness and equality. (19 N. Y. Jur., Electricity, Gas and Steam, § 31, p. 43; Matter of O’Sullivan v. Feinberg, 201 Misc. 658; Matter of City Ice & Fuel Co. v. Public Serv. Comm., 260 App. Div. 537, 541; Public Service Law, § 65, subd. 3.) The duty to serve the public goes hand and hand with the privilege of exercising a franchise. (Matter of Pennsylvania Cas Co. v. Public Serv. Comm., 225 N. Y. 397; Armour Packing Co. v. Edison Elec. Illuminating Co., 115 App. Div. 51.) It must be borne in mind that the franchise of defendant and other utility companies depends upon rights granted to them by the Legislature. As stated by Cardozo, J. in Tismer v. New York Edison Co. (228 N. Y. 156,161): “ The penalty has its origin in the statute, but the duty to serve would exist without the statute, for it results from the acceptance of the franchise of a public service corporation (People ex rel. Cayuga Power Corp. v. Public Service Comm., 226 N. Y. 527, 532).”
It is well settled that the obligations of a gas company to render service to the public, as defined by the Transportation Corporations Law, depends upon the rights granted to such company by the Legislature which rights and obligations are found in the statutes. Cases cited by defendant in its brief are readily distinguishable from the matter now before this court. An analysis of these cases, however, indicates that they are inapplicable in the instant action. The defendant urges that the holding of the Appellate Division, Fourth Department, in Clark v. Utica Gas & Elec. Co. (224 App. Div. 448) is controlling and decisive in the present action. A comparison of Clark v. Utica Gas & Elec. Co. with the present statute is necessary. The Clark v. Utica Gas & Elec. Co. case was decided in 1928 and section 15 of the Transportation Corporations Law was construed, as it existed in 1928, by chapter 762 of the Laws of 1926. Moreover, it should be noted that the 1926 amendment to said section 15 was amended on two subsequent *1020 occasions, first, by chapter 481 of the Laws of 1935, and again by chapter 545 of the Laws of 1937.
Prior to the enactment of chapter 481 of the Laws of 1935, section 15 of the Transportation Corporations Law permitted, without notice of any kind, the discontinuance of service to customers who had failed to pay for gas or electricity. Chapter 481 of the Laws of 1935 amended section 15 by adding the provisions that “ the supply of gas or electric light shall not be discontinued for any cause until and after a five-day written notice, either personally or by registered mail, has been given to such person.” In accordance with the statute as it then existed, the action of Fisher v. Long Is. Light. Co. (280 N. Y. 63) was decided, where it was held that the words 11 for any cause ” were construed to include a tampering with the meter, and that current might not, even under those circumstances, be discontinued without written notice. In 1937, the Legislature amended these provisions of said section 15 by chapter 545 of the Laws of 1937, by striking out the words ‘6 for any cause ’ ’ and substituting “ for non-payment of bills rendered for service ”. (Morris v. Consolidated Edison Co. of N. Y., 265 App. Div. 743.) It further amended the last sentence of said section 15 by incorporating an additional requirement to follow “ after a five-day written notice has been served upon such person either by delivering the same to such person personally or by mailing the same in post-paid wrapper addressed to such person at premises where service is rendered.” (Italics supplied.)
The court calls attention to the language of section 15 of the Transportation Corporations Law which now reads in part: “ If any person supplied with gas or electric light by any such corporation shall neglect or refuse to pay * * * such corporation may discontinue the supply of gas or electric light to the premises of such person * * *. But the supply of gas or electric light shall not be discontinued for nonpayment of bills rendered for service until and after a five-day written notice has been served upon such person either by delivering the same to such person personally or by mailing the same in postpaid wrapper addressed to such person at premises where service is rendered.” (Italics supplied.)
The question presented for construction will be considered and discussed seriatim. Statutory construction must be strictly construed. ‘1 In construing a statute the legislative intention must be sought in the language used therein contained with such helps as the canons of interpretation allow. But new language or, as in this case, an entirely new provision, cannot be imported into a statute giving it a meaning not otherwise *1021 found therein.” (McKuskie v. Hendrickson, 128 N. Y. 555, 558; see, also, People v. Ryan 274 N. Y. 149, 152; Kurlander v. Incorporated Vil. of Hempstead, 31 Misc 2d 121, 123; Village of Sands Point v. Sands Point Country Hay School, 2 Misc 2d 885, affd. 2 A D 2d 769; Suttle v. Croyden Drug & Luncheonette, 9 Misc 2d 1061, 1064, 1 Kent’s Commentaries, 462.)
The Legislature by its mandate of chapter 545 of the Laws of 1937 made it crystal clear by its incorporation in the statute of the phrase “ addressed to such person at premises where service is rendered ”, that its intention was to limit the right to discontinue service solely to the particular premises where notice was ‘1 addressed to such person at premises where service is rendered.” That is what the statute says and the meaning is perfectly clear and explicit.
It is thus well settled with respect to the supply of gas and electric light and expressly provided by statute that any such services shall not be discontinued for nonpayment of bills rendered for service until and after a five-day written notice has been served upon such person either by delivering it to such person personally or by mailing it in a post-paid wrapper addressed to such person at the premises where service is rendered. Therefore, a gas company may not discontinue its service for mere nonpayment of its lawful charges until and only after the expiration of a five-day written notice was served upon the person as required by statute (19 N. Y. Jur., Electricity, Gas and Steam, § 52).
The credible testimony and documentary evidence established that the defendant failed to serve the plaintiff with the required statutory notice as prescribed by section 15 of the Transportation Corporations Law of the State of New York. The plaintiff testified that he was never served with any five-day notice of discontinuance of service as required pursuant to said section; that the only ‘ ‘ Discontinuance Gas Service ’ ’ notice given by the defendant to the plaintiff was in the form of an invoice received by him on December 28,1959, which was offered in evidence as an exhibit and which notice was addressed to “ Guy it. Brewer 10735 17 St ” and which further states “ We will have to discontinue gas service unless full payment is received before expiration date 1/18/60 ”. Thus, it is readily apparent that the said notice was not mailed nor 11 addressed to such person at premises where the service is rendered ” (Transportation Corporations Law, § 15), to wit, No. 107-35 170th Street, Jamaica, New York, nor was the required five-day notice given to'plaintiff; hence, said notice is a nullity.
*1022 Section 12 of the Transportation Corporations Law requires all applications for service of gas or electricity as may be required to be made upon application of the owner or occupant of any building. In the absence of such written application by the plaintiff herein, he cannot be held liable for the gas service rendered by the defendant to premises at No. 168-08 112th Road. Moreover, defendant’s acts of transferring the balance due for gas service rendered at premises No. 168-08112th Road’s account to plaintiff’s account of his residence at No. 107-35 170th Street without any formal application or written authorization by plaintiff and cutting off gas service at plaintiff’s residence are entirely erroneous, discriminatory, capricious, illegal, arbitrary and constitute an unreasonable restriction on the beneficial use and free enjoyment of the said premises.
The evidence adduced upon the trial and the record herein demonstrate clearly that the defendant did not act in good faith and with honesty of purpose, and that it was, in fact, acting intentionally, knowingly and without reasonable justification or excuse, in violation of the statutory requirement of section 15 of the Transportation Corporations Law in shutting off the plaintiff’s gas service at his residence.
Therefore, the court finds a verdict in favor of plaintiff and he is entitled to the relief sought herein and defendant’s counterclaims are dismissed, with costs.