Leonard H. Sandler, J.
Plaintiff, a company engaged in the vending machine business, initiated this lawsuit by an action in replevin, in which it sought possession of chattels that had been the subject of a security agreement with Regalito Bar, Inc., the prior owner of the premises on which the chattels were located. It was alleged that the security agreement had been violated when, contrary to an agreement with plaintiff that its cigarette machine would be located and operated in the Regalito bar for a five-year period, Regalito sold the premises to the defendant without requiring in writing defendant’s assumption of the obligations of its contract with the plaintiff.
The usual bond having been secured, the Marshal was directed by plaintiff’s counsel to seize the chattels. At the end of a tense few hours of argument and negotiation in the evening of November 28, 1967, conducted in the presence of the Marshal and in the shadow of the waiting truck, the defendant paid plaintiff the full amount which Regalito allegedly owed, together with counsel, Marshal and trucking fees. The total amount paid that evening was $2,727.50.
After a rather confused series of procedural mishaps, the defendant ultimately interposed an answer to plaintiff’s claim, in which it sought recovery of the amount paid, together with *824 compensation for additional damages allegedly sustained, and punitive damages as well. During this same period, however, defendant sued Regalito to recover the sum it had paid to plaintiff, and the outcome of that suit, which was settled before the start of the instant action, is critical to the determination of the matter before me.
Since plaintiff professed to be content with the money received on the evening of the Marshal’s visit, this case proceeded to trial solely on the counterclaim.
The facts developed during the trial raised a number of legal questions of uncommon interest. After careful consideration, however, I conclude that the resolution of most of these issues is not essential to the decision in this case, so I will discuss them only briefly, where I refer to them at all.
The decisive issues, and the ones requiring extended analysis, are three in number.
First, whether the payment made by defendant to plaintiff to forestall the removal of the chattels was “ involuntary ”, creating a right to have the money returned.
Second, whether the events surrounding the attempted replevy gave rise to additional compensable damages and justify punitive damages.
Third, assuming the payment was “ involuntary ” and therefore unlawful, whether the settlement between Regalito and the defendant in effect reimbursed defendant for its payment and discharged plaintiff’s obligation with regard to it.
I conclude that the payment was ‘1 involuntary ’ ’ and therefore unlawful; that other compensable damages were not established, and that punitive damages are not warranted under the circumstances; and that the settlement indeed made the defendant whole and precludes any separate recovery.
A short narrative of the background facts should suffice to delineate these fundamental issues.
On May 25, 1965, the plaintiff entered into a cigarette vending machine installation contract with Regalito Bar, Inc., pursuant to which a cigarette machine was installed in the premises for a five-year period. A provision of the contract required Regalito to give plaintiff a security interest in all of its chattels, to cover commitments under the contract; and one of Regalito’s commitments was to require any buyer, as a condition of purchase, to assume in writing the terms of the vending machine contract. The contract also had a liquidated damage clause for loss caused by any breach, but the clause more correctly appears to be a formula (in my view, a reasonable one) for determining actual net profits which would be lost in the event of a breach. *825 Although there is a perplexing conflict between the official records submitted, I find that the financing statement was duly filed, not only in the appropriate county office (which is conceded), but also with the Secretary of State, and is formally adequate (Uniform Commercial Code, § 9-402).
Following a change in the ownership of the premises through a sale of the controlling stock interest in Regalito, a new agreement with similar provisions was executed on February 28, 1967, effectively extending the contract for five years from that date. This agreement was not filed, but the security interest continued to be perfected since the financing statement of 1965 would be effective for a period of five years from the date of filing (Uniform Commercial Code, § 9-403, subd. [2]).
Thereafter, on or about September 25,1967, Regalito sold the premises to the defendant. Contrary to its agreement with the plaintiff, Regalito did not require the defendant to assume the obligations of the vending machine contract, but instead allowed a provision to be inserted that squarely negatived such an assumption. Moreover, Regalito represented in the contract of sale that it knew of no claims against it, although that very agreement was a violation giving rise to a claim.
Notwithstanding these provisions in the contract of sale, the evidence is clear that at the time of the purchase, defendant knew that the vending machine contract created a security interest in the chattels of the bar, and that it might well lead to seizure of the chattels if defendant undertook to remove plaintiff’s cigarette machine.
Certainly, this knowledge of the security provision would, under the circumstances, defeat any claim that defendant was harmed by a flaw in the filing, if indeed there were any such flaw.
It seems probable that in proceeding with the purchase, defendant acted on one or more of the following assumptions: (1) that the security provisions were invalid, (2) that it could successfully deny knowing what it knew, or (3) that in any event the competing vending machine company, which had financed its purchase of the real estate, would protect it from any loss.
Shortly after the purchase, defendant disconnected plaintiff’s machine and directed its removal, thereby precipitating the effort to replevy, the payment described above, and this lawsuit.
I find that the $2,727.50 paid to plaintiff in order to forestall the dismantling of defendant’s business was an involuntary payment, unlawfully induced by coercion and duress (43 N. Y. Jur., Payment, §§ 83, 86-87).
I reach this conclusion even though I am satisfied that the Uniform Commercial Code (§ 1-201, subds. [31], [44]; § 9-204) *826 does permit the creation of a security interest to protect against damages from this kind of contract violation, that the ‘ ‘ liquidated damage ’ ’ provision is reasonable, that the financing statement was properly filed, and that the defendant had actual notice of the security interest affecting the chattels.
Plaintiff’s replevin action explicitly valued the chattels at $1,000; the amount received, as noted above, was $2,727.50. It seems unlikely that defendant insisted on paying the plaintiff more than the $1,000 value plaintiff had placed upon the chattels. The discrepancy between the two figures cannot be reconciled with a voluntary payment.
It is obvious that defendant, who owed plaintiff nothing, was compelled to pay a debt owed plaintiff by the prior owner, in order to prevent the dismantling of the premises and destruction of its business. (See 43 N. Y. Jur., Payment, §§ 88-90, 92; Adrico Realty Corp. v. City of New York, 250 N. Y. 29; cf. Glass v. Hoffmeister, 141 N. Y. S. 482.)
The striking circumstances presented here underline a troublesome aspect of the basic arrangement, suggesting strongly that the security provisions were not designed to provide a source of assured compensation in the event of breach, but were rather intended to confront the owner of the premises with a severe threat to the life of its business as an inducement to retain plaintiff’s cigarette machine.
In the light of the other conclusions already described, it is unnecessary to determine here whether the whole security arrangement should be found invalid as applied to the instant situation.
In addition to the return of the money paid, defendant sought punitive and other damages on a variety of theories.
Although I do not rule out the availability of punitive damages where security interests are improperly used to exact more money from the owner of the collateral than the value of the chattels seized (where, as here, there is no right to recover a deficiency from him), I do not believe this is a suitable case for punitive damages.
This defendant was well aware of the security interest in the chattels when he purchased the bar. I am satisfied that at all relevant times defendant acted under the direction of a competitor of plaintiff who had financed defendant’s purchase and was obviously willing to assume the risks in the situation.
Nor do I see a substantial basis for punitive damages in the Marshal’s return, in which he unaccountably reported filing a lien and attachment on the defendant’s chattels. The lien and attachment were voided earlier in this litigation by Judge *827 Leostforte, and nothing presented at trial indicated that this return had any practical consequences whatever, or represented anything more than the Marshal’s own confusion concerning the events in which he had participated.
The last critical issue is presented by plaintiff’s assertion that in any event, defendant was reimbursed for the money paid, through a settlement reached in the course of a lawsuit commenced by the defendant and its principals to recover that payment from Regalito and its principal.
The undisputed facts are that defendant there sued for the very sum at issue before me, together with a small separate amount, that Regalito counterclaimed for the unpaid balance of the purchase price, and that the matter was settled by a net payment of $2,000 by the present defendant.
Although the language of the stipulation of settlement is silent on the matter, I am more than satisfied from the pleadings, the nature of the issues, the final result, and the testimony of both the attorney for Regalito and the principal owner of the defendant, that the defendant received full credit in that settlement for the money plaintiff had unlawfully obtained from him.
The defendant having been made whole in the previously concluded litigation, I am not aware of any authority that permits it to recover a second time.
It is equally clear that plaintiff, having recovered for the violation of its vending machine contract, is not now entitled either to replevin of the chattels or its monetary equivalent.
Accordingly, I find for the defendant on plaintiff’s claim, and for the plaintiff on defendant’s counterclaim.