Harold H. Hymes, J.
The plaintiff is suing the defendant power company for the return of moneys paid under the threat of discontinuing electric and gas service to his home.
The plaintiff is the owner of a building at 209 Lafayette Street, Utica, New York. The building was unoccupied for some years. According to the defendant’s records on May 7, *877 1973, the plaintiff called on the telephone and asked that gas and electric service be provided for the premises at 209 Lafayette Street and that the bills be sent to his home at 39 Sunnyside Drive. The record indicates that it was to be occupied as a restaurant and that his credit was good and that there were no arrears in payment. Service was installed by the defendant. On May 17, 1973, plaintiff leased the premises to GAR Enterprises, Inc., for use as a restaurant and bar. Under the terms of the lease, the tenant agreed to pay all utilities.
Although the defendant’s records show that the bills were to be sent to the plaintiff’s home, the plaintiff states that he never received any bill. This is not contradicted by the defendant or its agents, and the court therefore concludes that the bills were not sent to the plaintiff’s home at 39 Sunnyside Drive.
The first payment on the electric and gas service was made on September 17, 1973. The plaintiff states that he did not make this payment. By November 27, 1973, the amount due had reached $527.83. On November 29, 1973, another payment was made to the defendant in the amount of $200. The plaintiff states that he did not make this payment either.
On December 13, 1973, he was served a "collector’s notice” in person, which stated that there was an amount of $146.72 due and that unless it was paid, service would be suspended "as provided in notice previously forwarded to you by U.S. mail.” On that same day, a payment in the amount of $146.52 was made to the defendant. Plaintiff denies making this payment. This left a balance of $181.31 still due the utility company.
The plaintiff states that after he received this collector’s notice, he visited with Mr. Flynn, the agent in charge of collections for the defendant. He states that Mr. Flynn knew that GAR Enterprises, Inc., had made the previous payments and that he told Mr. Flynn to look to GAR Enterprises, Inc., for payment, or to cut off their service. Some time later, he received another "collector’s notice” which indicated that the amount of $398.49, plus a $450 deposit, was due or that service would be disconnected. This is the amount that was due as of December 27, 1974. Once again, the plaintiff told Mr. Flynn, an agent for the defendant, to look to GAR Enterprises, Inc., for payment, or to shut off the service at 209 Lafayette Street. Nothing more was done by the defendant *878 company and no payments were made on this account thereafter. Not until March 15, 1974, was service at 209 Lafayette Street discontinued. By that time, the final bill had reached $872.63.
Without authority from the plaintiff, the defendant transferred the balance due on the 209 Lafayette Street account to the plaintiff’s account at his home at 39 Sunnyside Drive. When the plaintiff protested to Mr. Denny, the defendant’s employee in charge of such matters, he was told that if he did not pay the full amount due, service to his home would be cut off. Under protest, the plaintiff paid to the defendant $980.66, which included service at his home and at 209 Lafayette Street. He now seeks a refund of $837.86, admitting that out of the amount paid to the defendant, he personally owed $142.72.
Except for the record of account of the service at 209 Lafayette Street, the defendant offered no evidence to contradict the testimony of the plaintiff. The court therefore concludes that what the plaintiff testified to is true: that the defendant’s employees knew that the GAR Enterprises, Inc., was the party using the utilities at 209 Lafayette Street; that the defendant had been informed by the plaintiff to look to the GAR Enterprises, Inc., for the payment of the bills; that the plaintiff did not receive the bills from the defendant at his home; that the only notices of delinquency were the two "collector’s notices” described by the plaintiff; that Mr. Denny of the defendant corporation, did threaten to shut off the plaintiff’s utilities at his home if he did not pay the electric bill due for 209 Lafayette Street; that the plaintiff made the payment to the utility company under protest.
It also appears from the record submitted by the defendant company that, even after it had served these notices upon the plaintiff, it permitted the utility bill to accumulate from December 13, 1973 to March 15, 1974, until it amounted to $872.63. The defendant’s record also shows that this final bill was transferred to the plaintiff’s home account without his permission.
The defendant has relied upon the case of Dworman v Consolidated Edison Co. (26 AD2d 535), which stated that service to the home of a customer may be discontinued by a utility even though the unpaid bills were accumulated for service at the home and its business place. In that case, however, the customer signed an agreement that the utility *879 bill at his place of business could be transferred to his home account. There was no such agreement in this case.
Section 15 of the Transportation Corporations Law states that if any person supplied with electricity shall neglect or refuse to pay, then service may be discontinued. The proof before this court shows that the service was not supplied to the plaintiff but was, in fact, supplied to another party, to wit, the GAR Enterprises, Inc.
In Brewer v Brooklyn Gas Co. (33 Misc 2d 1015, 1021) the court concluded that the intention of the Legislature "was to limit the right to discontinue service solely to the particular premises where notice was 'addressed to such person at premises where service is rendered’ ”. This would allow discontinuance of service at 209 Lafayette Street, but not at 39 Sunny-side Drive.
It is true that service was not disconnected at the plaintiffs home, and that Mr. Denny only made a threat to do so. Such threat was in violation of the procedure set forth in rules and regulations of the Public Service Commission (16 NYCRR 143.1 et seq). Manner of service of notice to discontinue and the contents of such notice in writing are set forth under that section. Such procedure was not followed in regard to service at the plaintiffs home.
Under circumstances such as these, where a threat to discontinue gas and electric service to one’s home is made by an official of the utility company, the threat is equal to the deed. One who is faced with that dilemma cannot be blamed for making a payment under protest to avoid a cutoff of service.
Payments made under duress and coercion may be recovered. The threat of putting the payer out of business or subjecting him to serious penalty is coercion, and payments made under protest may be recovered. (Eveready Elec. Co. v City of New York, 28 Misc 2d 615.)
In Subin v City of New York (132 Misc 426, 427) the court held that "Where a property owner is forced to pay a water tax by a threat to shut off the supply, it is a payment under compulsion”, and payment made under such circumstances may be recovered. (Cf. Regal Music Co. v Salon El Manicero, 62 Misc 2d 822; see 43 NY Jur, Payment, §§ 83-90.) The burden of proof to establish such coercion and duress is on the plaintiff and, under the evidence in this case, he has sustained this burden.
*880 Judgment is granted to the plaintiff against the defendant in the amount of $837.86, plus interest and disbursements.