486 A.2d 248

**BALTIMORE GAS AND ELECTRIC COMPANY, et al.**

v.

**Janice EVERETT.**

**No. 450, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Jan. 10, 1985.

Stephen J. Rosasco, Baltimore (Paul W. Davis, Baltimore, on the brief), for appellant, Baltimore Gas and Elec. Co.

Kirk J. Emge and Sandra Hall-Eckroade, Baltimore, for appellant, Public Service Com'n of Maryland.

John K. Keane, Jr., and Thomas C. Gorak, Baltimore, for amicus curiae, Maryland People's Counsel.

Mary W. Coffay, Baltimore (Robert M. McCaig, Baltimore, on the brief), for appellee.

Argued before WILNER, BLOOM and GETTY, JJ.

WILNER, Judge.

There are two basic questions presented to us in this appeal: When a public utility expresses an intention to terminate service to a customer and the customer complains to the Public Service Commission, in a proceeding before the Commission emanating from the complaint, (1) does the utility have the burden of showing that the proposed termination is justified or does the customer have the burden of showing that it is unjustified, and (2) where the proposed termination is purportedly based on COMAR 20.31.02.04 (Fraudulent Use), what standard of proof is required? We need answer only the first question.

The instant dispute is between the Baltimore Gas and Electric Company (BG & E) and Janice Everett. At some point, BG & E notified Everett that it intended to terminate her service at 1600 Chilton Street. Upon Ms. Everett's inquiry as to the basis of the proposed termination, BG & E, on May 7, 1981, wrote to her as follows:

"In reference to your inquiry, the following information is submitted.

We have evidence which we feel holds you responsible for $4242.60 in unpaid bills. Listed below are the addresses, amounts and time periods of those bills.

| Cut-in | – Cut-out | Address | Amount | Miscellaneous Charges |
|--------|-----------|---------|--------|------------------------|
| | 5/69 | 1737 Abbottston St. | $139.03 | $6.50 Court Cost |
| 7/73 | – 3/74 | 1520 Homestead St. | 207.95 | |
| 4/75 | – 4/77 | 508 E. 43rd St. | 691.25 | 6.00 Recon Chg. |
| 5/77 | – 8/78 | 508 E. 43rd St. | · 1078.04 | |
| 8/78 | – 5/79 | 508 E. 43rd St. | 772.77 | 3.00 Recon Chg. |
| 5/79 | – 9/79 | 508 E. 43rd St. | 544.03 | |
| 9/79 | – 5/80 | 508 E. 43rd St. | 794.03 | |

If you dispute these billings, you do have the right to request a formal hearing by the Public Service Commission of the State of Maryland."

On June 4, 1981, Ms. Everett filed a complaint with the Public Service Commission. Attaching a copy of BG & E's letter, she averred that she had never resided or had service in her name at any of the addresses listed in the letter. She asked that BG & E be "stayed" from terminating her service, that it be prohibited from collecting the amounts "allegedly owed" by her, and that a hearing be held in the matter. The Commission docketed the complaint as Case No. 7593, and, after informal attempts to resolve it proved fruitless, the Commission referred the case to a hearing examiner. *See* Md.Code Ann. art. 78, § 20(b) and (c).

At some point, BG & E decided not to press the first three claims made in its letter, either because it had already written them off as bad debts or because the bill had been paid, but it continued to consider Ms. Everett responsible for $3,188 for service rendered to 508 E. 43rd Street between May, 1977, and May, 1980. In a formal answer to the complaint, filed in September, 1981, BG & E averred that

"[B]etween May 1977 and May 1980, Complainant resided at 508 E. 43rd Street and *fraudulently used gas* and electric service supplied from BG & E by (1) failing to contract for service in May 1977, (2) making application in a ficti[t]ious name or in the name of another family

member or occupant in August 1978, (3) failing to contract for service in May 1979 and (4) making application in a ficti[t]ious name or name of another family member or occupant in September 1979. BG & E further avers that Complainant is liable for such fraudulent use in the amount of $3,188.87 and that BG & E is entitled to terminate service *for non-payment of said outstanding amount.*" (Emphasis added.)

The matter came on for hearing on October 28, 1981, before the hearing examiner. At the outset, counsel for Ms. Everett, relying on the allegation of "fraud" in BG & E's answer, moved that the burden be placed on the company "to go forward and present proof to that effect rather than my client having to disprove an allegation for which no basis has yet been presented." The motion, in other words, was "to have the company go forward with their [*sic*] evidence and have us rebut." BG & E opposed the motion, contending that the allegations of fraudulent use merely "tracked" the Commission's regulation (COMAR 20.31.02.-04), that Ms. Everett was the complainant, and that the "burden of proof is on the complaining party to prove facts to establish her basis for relief in the complaint."

The hearing examiner agreed with Ms. Everett and thus granted her motion, whereupon BG & E proceeded to present its evidence. That evidence, which we need not recount, tended to show that Ms. Everett did indeed reside at 508 E. 43rd Street, as alleged in BG & E's letter, and that she did, in fact, obtain service at that address by various means, including the knowing use of other people's names and actually "jumping" the meter. In rebuttal, Ms. Everett produced evidence indicating that she never lived at the 43rd Street address. She claimed that, from 1975 to October, 1980, she lived with her mother and brothers at 3300 Round Road, and that, during that period, the home on 43rd Street was occupied at various times by her daughters Debra and Janet, her grandchildren, and one William Morgan. She admitted that she "used to babysit" and had

"spent the night there," but firmly maintained that "I didn't live there. It was my daughter's house."

On May 17, 1982, the hearing examiner issued his proposed order. In it, he reaffirmed his conclusion that BG & E had the burden of proof in the matter. Relying on *Loyola Federal Savings & Loan v. Trenchcraft*, 17 Md. App. 646, 303 A.2d 432 (1973), he further concluded that, because the proposed termination was based on "fraudulent use," BG & E had to satisfy the burden by clear and convincing evidence, and not merely by a preponderance of evidence. Finally, he stated that he was "unable to find sufficiently reliable evidence that the Complainant was living at the premises in question." In view of the "persistent and unequivocal denials" by Ms. Everett, he declined to accept "the merely permissible inference" or circumstantial evidence to the contrary. Accordingly, he held that BG & E had failed to meet its burden by clear and convincing evidence and thus proposed that the company be prohibited from terminating service to Ms. Everett "on the basis of its claim of fraudulent use at 508 East 43rd Street."

BG & E appealed to the Commission. *See* art. 78, § 20(c). Each party thereafter filed a memorandum, but neither requested that any additional evidence be considered by the Commission.[1] On November 5, 1982, the Commission issued its order. It agreed with the hearing examiner that "where a utility seeks to terminate service for fraudulent use, the burden of proof shall be upon the utility to show the customer has engaged in such fraudulent use." It disagreed, however, that the standard of proof was "clear and convincing evidence," but determined the appropriate standard to be "preponderance of the evidence." Finally, reviewing the evidence on the record before the examiner, the Commission found that the company had met its bur-

---

1. Section 20(c) of art. 78 provides that "[f]ollowing the noting of an appeal, the Commission promptly shall consider the matter on the record before the hearing examiner, conduct any further proceedings (including the filing of briefs and the holding of oral argument) it deems necessary and, thereafter, issue a final order in the matter."

den—that "the weight of the evidence establishes Janice Everett's responsibility for unpaid utility bills at 503 [*sic*, 508] East 43rd Street during the period between May 1977 and May 1980...." It therefore dismissed her complaint.

Everett appealed to the Circuit Court for Baltimore City which, in a memorandum opinion filed February 24, 1984, agreed with the conclusions of the hearing examiner that (1) BG & E had the burden of proof, and (2) the standard of proof was "clear and convincing evidence," not merely a preponderance of evidence. The court reversed the Commission's order dismissing the complaint and remanded the case to the Commission for further proceedings.

From that judgment, BG & E and the Commission have appealed. BG & E complains that the court erred in both of its conclusions; the burden, it says, is on Ms. Everett, as the complainant, to show the absence of fraudulent use by a preponderance of the evidence. The Commission finds fault only with the standard of proof adopted by the court. Ms. Everett, supported by the Maryland Office of People's Counsel, as *amicus curiae*, urges that the circuit court was correct in both conclusions. Ms. Everett seeks to raise, as well, the question of whether there was sufficient evidence in the record to support the Commission's decision to permit termination of her service.

Each of the parties has filed an extensive brief, citing many authorities and prophesying, *a la* Cassandra, the most awful results if its (or her) position does not prevail. The issues are not really so complex; nor will the efficient provision of utility service be impeded by the conclusions we reach, which are basically those reached by the Commission. We shall explain our reasons as simply and concisely as possible, without pausing to discuss or rebut each sub-argument or authority cited in support of a contrary assertion.

To put the matter in its proper context, it is important, at the outset, to keep in mind the nature of this proceeding. In the first place, unlike the situations in *Carter v. Suburban Water Co.*, 131 Md. 91, 101 A. 771 (1917), *Annapolis*

*Public Ut. Co. v. Martin,* 131 Md. 393, 102 A. 465 (1917), and *Surratt v. Ches. & Pot. Tel. Co.,* 156 Md. 510, 144 A. 495 (1928), this is not an action at law or in equity, but a proceeding before the administrative agency charged with regulating public utilities. BG & E has not charged Ms. Everett with civil or criminal fraud; it is not seeking, in this proceeding, any judgment against her, either for tort damages or for the bill it claims she owes. Nor is Ms. Everett seeking against BG & E either judicial injunctive relief or damages for wrongful termination of service.

Equally significant, notwithstanding all of the discussion about fraud in general and "fraudulent use" under COMAR 20.31.02.04 in particular, this is not really a fraud case. BG & E was not attempting to terminate Ms. Everett's service because of any existing, ongoing "fraudulent use." *See* COMAR 20.31.02.03, permitting a utility to terminate service without notice because of the customer's tampering with utility equipment or "unauthorized use of service by any method, including diversion of gas or electricity around a meter," and COMAR 20.31.02.04, permitting termination "if it is determined by the utility that the service *at the premises* is used in a fraudulent manner." (Emphasis added.) From the record before us, it seems clear that BG & E moved against Ms. Everett for no other reason than that she refused to pay charges of $4,242 (later reduced to $3,188) that the company claimed she owed for past service rendered to addresses other than her current one. That is made clear in the company's answer to Ms. Everett's complaint. *See ante.* There is nothing in this record to suggest that had Mrs. Everett tendered the amount claimed, BG & E would have sought to terminate her current service.

Thus, the dispute, as it ultimately was presented to the Public Service Commission, was simply whether Ms. Everett was responsible for the gas and electric service furnished to 508 E. 43rd Street from April, 1975 to May, 1980. The issue of "fraudulent use," throughout, had but tangential relevance. It may well be that the methods allegedly

used by Ms. Everett to obtain and retain service at the 43rd Street address amounted to a "fraudulent use" as defined in COMAR 20.31.02.04, but whether they did or did not was of no real importance. At issue was not the characterization of her actions as fraudulent, but only whether they, or her alleged residence at that address, sufficed to make her liable for the charges.

The distinction may be subtle, but it is important. COMAR 20.31.02.04 provides, in relevant part:

"A. Electric service or gas service, or both, may be terminated in accordance with this regulation if it is determined by the utility that the service *at the premises* is used in a fraudulent manner.

B. 'Fraudulent use' includes, but is not limited to, the following activities:

(1) Using service without having contracted with the utility to do so and refusing to sign an application for service;

(2) Making an application in a fictitious name;

(3) Making application in the name of another member of the family or household or other occupant to assist in avoiding payment or a prior outstanding bill.

C. If fraudulent use is detected, the utility may immediately give 5 days' notice that the service will be terminated for fraudulent use (naming the particular use), and may then proceed to terminate service [subject to special provisions where the occupant is seriously ill]." (Emphasis added.)

This type of conduct will likely result in the company's not being paid for service currently being rendered. Termination of that service is the most practical and effective means of averting that future loss; the company is not required to sit by, sustain the loss, and then try to collect it.

That is not the case, however, where the dispute is only over charges for past service at another address. Whatever may be the basis of that kind of dispute, even including a disagreement over whether the customer obtained the past

service by conduct amounting to "fraudulent use," the possible loss to the company is a contained one. Although termination of existing service may be a permissible means of collecting the past debt if the Commission finds the charges to be proper, such termination is not immediately required in order to prevent a further, avoidable loss to the company. Thus, the question of whether the customer obtained past service by "fraudulent use" has relevance only in determining whether the charges for that service are proper ones.

Once this distinction, and with it the appropriate context, is recognized, the controlling principles become clear.

■ As a regulated utility, a "guarded monopoly," BG & E has a duty to provide service to the public. Unlike unregulated businesses, it does not have an unfettered right to deny service because of disputes over charges, either under the public service commission law or as a matter of common law. This was made clear nearly seventy years ago in *Carter v. The Suburban Water Co., supra,* 131 Md. 91, 94, 101 A. 771, where the Court ruled that, while a utility company had the right to adopt a rule providing for the termination of service for nonpayment of its bills, it had no right to "arbitrarily shut off the consumer's supply when the amount claimed is a matter of just dispute." In reaching that conclusion, the Court quoted from *Poole v. Paris Mountain Water Co.,* 81 S.C. 438, 62 S.E. 874 (1908):

> " 'While a public service water company has the right to cut off a consumer's water supply for non-payment of recent and just bills for water rents, and may refuse to engage to furnish further supply until said bills are paid, the right cannot be exercised so as to coerce the consumer into paying a bill which is unjust or which the consumer in good faith and with show of reason disputes, by denying him such a prime necessity of life as water, when he offers to comply with the reasonable rules of the company as to such supply for the current term.' "

The same principle has been carried over into the public service commission law. *See,* in general, COMAR, title 20, subt. 31, and in particular ch. 04 of subt. 31.

A "disputed bill," for purposes of these regulations, is defined in COMAR 20.31.01.02B(3) as including "a bill which is the subject of a bona fide controversy between a customer and the utility regarding any billing error, including . . . billing for service which the customer alleges was not used or was used by another person." Pending the ultimate resolution of such a dispute, "the customer's service may not be terminated." COMAR 20.31.04.02C and D.

 Neither these regulations nor any provision of art. 78 purport to vest in the Public Service Commission the authority to adjudicate what amount, if any, is actually owed by the customer. Subject to some arbitration agreement, that is a matter that can only be resolved in court. *See Carter v. The Suburban Water Co., supra,* 131 Md. at 95, 101 A. 771: "We do not find that the Public Service Commission is invested with the power to hear and determine the controversy between the parties as to the correctness of the bills rendered, or to determine what amount the [customer] owes." What the Commission *does* control through its regulations is the power of a regulated utility to discontinue service when the bill is in dispute, to make certain that there is at least a reasonable basis for the termination. The format adopted by the Commission for exercising that control, where residential customers are involved, is set forth in COMAR 20.31.04.02, which provides, in relevant part:

"B. If there is a disputed bill rendered by a utility in accordance with its tariff as on file with the Commission or a dispute regarding a proposed termination, the utility shall immediately make such investigation as is required by the particular case and report the result to the customer.

\* \* \* \* \* \*

E. If, following the investigation into a disputed bill, the utility determines that the disputed service has been provided and the bill rendered pursuant to its tariffs on file with the Commission and to the requirements, orders, and regulations of the Commission, the utility shall inform the customer of this determination and may require full payment of the bill.

F. In a dispute concerning a proposed termination, the utility shall permit the customer to dispute or correct the reason or reasons for the termination. The utility shall make a decision regarding the dispute and shall promptly inform the customer of that decision.

G. The customer may file a complaint with the Consumer Assistance Section of the Commission within 7 days of being notified by the utility of its determination.

H. The complaint may be written or oral and shall contain, at a minimum, the following information:

(1) The name, address, and account number of the customer;

(2) The utility involved in the dispute;

(3) Either the disputed portion of the bill and the full amount of the bill, or the reason or reasons for the proposed termination; and

(4) The reason for the dispute.

I. A complaint made pursuant to this regulation may be dismissed and the utility may terminate the service if the Commission or its staff determines that the customer has not negotiated with the utility in good faith or that the customer has otherwise failed to comply with the provisions of this subtitle."

The complaint procedure set forth in this regulation is nothing more nor less than a method of bringing disputes over proposed terminations to the attention of the Commission, in order that it might exercise its authority to control the utility's power to terminate service. In light of the Commission's inability to adjudicate any underlying dispute over what, if anything, is owed by the customer, it has no

other practical function. Thus, notwithstanding that the matter is initially presented to the Commission *via* the customer's complaint, the utility is, in fact, the moving party, asserting the affirmative of the issue. It, not the customer, is seeking to change the *status quo*. It is seeking to exercise a power that it does not have an unfettered right to exercise. It is alleging a circumstance or set of circumstances that arguably justifies a change in the existing relationship with its customer.

■ Under general principles of law, it is entirely permissible to place on the party seeking to change the *status quo* the burden both to come forward with the evidence in support of its action and to persuade the trier of fact that the change is justified. *See, for example, Daniels v. Superintendent*, 34 Md.App. 173, 179–80, 366 A.2d 1064 (1976). We see no reason to apply a different rule here. Indeed, although we have found no case involving precisely the same circumstances as are now before us, the rule generally seems to be that where a utility seeks to terminate existing service to a residential customer, the utility has the burden of proving that the proposed termination is justified. *See Montalvo v. Consolidated Edison Co. of New York*, 110 Misc.2d 24, 441 N.Y.S.2d 768, 775 (N.Y.Co. 1981), expressing that view, long taken by the New York courts.[2] *See also Fay v. Miller*, 183 F.2d 986 (D.C.Cir. 1950); *DiGiacomo v. Diamond State Telephone Company*, 356 F.Supp. 1063 (D.Del.1973); *Telephone News System, Inc. v. Illinois Bell Telephone Co.*, 220 F.Supp. 621 (N.D. Ill.1963); *Kelly v. Illinois Bell Telephone Company*, 210 F.Supp. 456 (N.D.Ill.1962); and *Andrews v. Chesapeake & Potomac Telephone Co.*, 83 F.Supp. 966 (D.D.C.1949), plac-

---

**2.** *See also Brooklyn Union Gas v. MacGregors Custom Coach*, 122 Misc.2d 287, 471 N.Y.S.2d 470 (N.Y.City Civ.Ct.1983); *Brewer v. Brooklyn Union Gas Company*, 33 Misc.2d 1015, 228 N.Y.S.2d 177 (Queens Co.1962); *In re DiBenedetto*, 83 N.Y.S.2d 920 (Queens Co. 1948); *Hollander v. Westchester Lighting Co.*, 79 Misc. 646, 140 N.Y.S. 544 (West.Co.1913); *Levine v. Brooklyn Union Gas Co.*, 146 A.D. 464, 131 N.Y.S. 255 (1911).

ing the burden on the utility to justify termination of telephone service, even when termination is based on 18 U.S.C. § 1084(d), *requiring* a utility to terminate service when notified by a law enforcement agency that the service is being used to transmit or receive gambling information.

■ Accordingly, we agree with the Commission and the circuit court that the burden was on BG & E to justify the proposed termination.

The dispute over the standard of proof to be applied arises from the premise that the basis of the proposed termination was Ms. Everett's alleged "fraudulent use" at the 43rd Street address. Ms. Everett argues that "fraudulent use" under COMAR 20.31.02.04 is essentially the same as basic civil fraud, that the standard for proving civil fraud is clear and convincing evidence, and that no lesser standard should be employed in establishing "fraudulent use." As we have seen, however, the proposed termination here was not based on any existing fraudulent use at the place where the service was currently being rendered, but rather arose from Ms. Everett's refusal to pay a bill for service allegedly rendered to her or at her instance at previous addresses. Even if her analogy between "fraudulent use" and civil fraud were valid, therefore, it would have no application to this case.

The contested issue of fact before the Commission was whether, during the period in question, Ms. Everett either resided at 508 East 43rd Street or otherwise caused service to be provided there under circumstances that might make her liable for that service. We see no reason why the normal "preponderance of evidence" standard should not apply to the resolution of that issue. *Cf. Bernstein v. Real Estate Commission of Maryland*, 221 Md. 221, 156 A.2d 657 (1959).

The Commission, applying that standard, found that BG & E had met its burden of establishing Ms. Everett's "responsibility for unpaid utility bills at 503 [*sic*, 508] East 43rd Street during the period between May 1977 and May

1980...." We cannot say, from the record before it and before us, that the Commission erred in making that finding. There was substantial evidence to support a finding that Ms. Everett did indeed reside at that address during that period.

We therefore conclude that the circuit court erred in reversing the Commission's order.

JUDGMENT REVERSED; CASE REMANDED TO CIRCUIT COURT FOR BALTIMORE CITY FOR ENTRY OF JUDGMENT AFFIRMING ORDER OF PUBLIC SERVICE COMMISSION; APPELLEE JANICE EVERETT TO PAY THE COSTS.