# OTTENHEIMER PUBLISHERS, INC. *v.* EMPLOYMENT SECURITY ADMINISTRATION

[No. 182, September Term, 1974.]

*Decided July 10, 1975.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*David M. Tralins,* with whom were *Allan H. Fisher, Jr.,* and *Fisher & Fisher* on the brief, for appellant.

*Diana G. Motz, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

This case concerns the sufficiency of a notice given to an employer, as required by the Unemployment Insurance Law, Maryland Code (1957, 1969 Repl. Vol.), Art. 95A, § 7 (d), informing the employer of a former employee's eligibility for unemployment benefits.

Ottenheimer Publishers, Inc., employed Joan Scherr for several months on a part-time basis. The employment relationship was terminated on August 11, 1971, when Ms. Scherr informed Ottenheimer that she was not able to work on a full time basis as requested. Subsequently Ms. Scherr filed a claim for unemployment benefits. As requested by the Employment Security Administration, Ottenheimer filed termination information setting forth the reason for her termination as inability to work on a full time basis.

A "Nonmonetary Determination" notice was sent to Ottenheimer and to the claimant on August 26, 1971. The notice is divided into four sections with headings printed vertically in the left-hand margin to identify each section. The first section, labeled "Claims Examiner's Determination," begins with a printed sentence stating: "I determine that the claimant is disqualified for the following cause:". Below this are listed three columns of reasons for disqualification with boxes to check off the appropriate reasons for disqualification in particular cases. The reasons checked on the form are: "Able and Available — 4(c)"; "Referral or Job Refusal — 6(d)"; and "Severance Pay — 6(i)." Explanations printed on the reverse side of the form

referring to provisions of the Unemployment Insurance Law indicated that the claimant was disqualified for not being available for full time work, for refusing to accept suitable work, and for receipt of severance pay.

Below the boxes is a space where a further explanation of the claims examiner's determination can be written. In this space, written in longhand, is the following (emphasis supplied):

> "You were terminated by Ottenheimer Publishers because you were unable to accept full-time employment. Under the Md. U. I. Law you are held to have refused an offer of suitable work without good cause. *Benefits are denied.* In addition, you received one week's severance pay which under the Md. U. I. Law *is a bar to benefits. Benefits are denied."*

Below this is a smaller subsection of printed sentences with blanks for dates to be filled in. This subsection states:

> "The following disqualification is imposed
> From —
> Week of — _____ and until you earn 10 x
>             weekly benefit amount ($_____)
> From —
> Week of — 8-11-71 and 4 weeks ending 9-11-71
> From 8-12-71 to 8-21-71"

The next section is labeled "Appeal Rights" and contains two short paragraphs. The first paragraph is preceded by the word "CLAIMANT" in bold face and explains where and when an appeal may be filed, in addition to certain obligations of the claimant. The second paragraph, labeled "EMPLOYER AND CLAIMANT" in bold face, contains a single printed sentence stating: "The last date for filing an appeal is 9-7-71."

After the expiration of the appeal period, Ottenheimer received a notice that two payments had been made to Ms. Scherr and that its Experience Rating Account had been charged for these benefits. Ottenheimer's president sent

several letters to the Employment Security Administration protesting the charge to Ottenheimer's Experience Rating Account and asserting that Ottenheimer had received a notice that benefits had been denied to Joan Scherr. Ottenheimer sent a copy of the August 26, 1971, notice to the Administration. The Employment Security Administration replied that the disqualification was only "from week ending August 11, 1971 and four weeks ending September 11, 1971." This is an apparent inconsistency with the notice itself which appears to state that the disqualification is *from* the week of August 11 and not the week *ending* August 11. There was also no explanation of the second disqualification imposed from August 12, 1971, to August 21, 1971.

Ottenheimer appealed the charging of its account to the Executive Director of the Employment Security Administration, raising the issues of the merits of Ms. Scherr's claim and the adequacy of the notice. However, the Executive Director refused to take any testimony on the merits of the claim or to consider the adequacy of the notice to inform Ottenheimer of the claimant's eligibility for benefits. The only issue considered was whether the benefits paid to the claimant were properly chargeable to Ottenheimer's Experience Rating Account, and the Executive Director decided that the payments were properly chargeable. This decision was affirmed upon appeal to the Board of Appeals, which also limited review to the issue of the chargeability of Ottenheimer's account for benefits already paid to Ms. Scherr.

Having exhausted its administrative remedies, Ottenheimer then appealed to the Circuit Court for Baltimore County, where it again raised the issue of the adequacy of the notice. The court held that the Nonmonetary Determination notice was not ambiguous and upheld the Board of Appeals' decision. From that decision, Ottenheimer appeals to this Court.

Ottenheimer argues that the Nonmonetary Determination notice of August 26, 1971, was ambiguous and misleading, effectively denying the employer its right to notice and a hearing. More particularly, Ottenheimer contends that the

two statements that benefits are denied, and the first sentence of the notice which states that the claimant is disqualified, led it to believe that no benefits were to be paid. This belief was reinforced by the section labeled "Appeal Rights," which appeared to be addressed to the claimant, giving the appearance that only the claimant would desire to appeal the determination. The appellee contends that the subsection which begins, "The following disqualification is imposed," clearly qualifies and limits the disqualification period to the time stated therein, thus adequately notifying the employer of the determination of the employee's claim.

A claimant is disqualified for benefits when he fails, without good cause, to accept an available, suitable job. The disqualification is effective from the date that the claimant was notified that the particular job was available, and the disqualification continues for a period of from one to ten weeks after notification of the availability of the job. Art. 95A, § 6 (d). However, apart from this provision, the claimant must generally be available for work for each week benefits are claimed. Art. 95A, § 4 (c). Ottenheimer contends that at a hearing it could have presented evidence that it had offered Ms. Scherr a full time position, that she had refused the position, and that she was throughout the pertinent period unavailable for work. This would have disqualified her from receiving any benefits. In fact, after Ottenheimer informed the Employment Security Administration by letter dated February 3, 1972, that Ms. Scherr had refused an offer of employment two weeks earlier, a second Nonmonetary Determination notice was sent on March 19, 1972, stating that because the claimant was not available for work, a disqualification was imposed from "12-19-71 until able and available for full time work." Counsel for the Employment Security Administration conceded at oral argument before us that if the first notice of August 26, 1971, were so unclear as to mislead Ottenheimer into believing that benefits had been denied and that it was unnecessary to seek a hearing to present evidence of the claimant's continuing disqualification, Ottenheimer had in fact been prejudiced.

The Unemployment Insurance Law requires that a prompt determination of a claim must be made by an examiner. The determination "in the event of a denial, shall state the reasons therefor." Art. 95A, § 7 (c). Notice of the determination "shall be promptly given . . . to the last employing unit by whom claimant was employed." Art. 95A, § 7 (d). "The claimant, or any other party entitled to notice of a determination . . . , may file an appeal from such determination with the Board of Appeals within seven days after the date of mailing of the notice . . . ." Art. 95A, § 7 (e). The parties must be afforded a "reasonable opportunity for a fair hearing," after which the determination may be affirmed, modified or revised. *Ibid.* It is clear that the purpose of the notice required by the statute is to inform the parties of whether or not benefits are to be paid, and to provide sufficient information so that they may decide if an appeal is in their interest.

We agree with Ottenheimer that the Nonmonetary Determination notice is ambiguous and not adequate notice of the examiner's determination as required by Art. 95A, § 7 (d). The "heart of the requirement of notification in administrative proceedings, [is that] the noticee should be apprised clearly of the character of the action proposed and . . . the basis upon which it rests . . . ." *Cassidy v. Board of Appeals,* 218 Md. 418, 424, 146 A. 2d 896 (1958), quoting 2 Merrill, *Notice* § 796. In the present case, the notice clearly stated that the claimant was disqualified, twice stated that benefits were denied, and indicated reasons which implied that no benefits were to be paid. Given the tenor of the notice that the claimant was disqualified and benefits denied, the single sentence which was supposed to limit the period of disqualification, itself confusing, was hardly sufficient to alert the employer to the possibility that benefits would be paid in the future and that failure to appeal within seven days could lead to its Experience Rating Account being charged for any benefits paid. Where there is a statutory requirement of notice, the notice must contain such information and be presented in such a manner so as to "enable a person of ordinary perception to understand the

nature and purpose of the notice." *Bob Holding Corp. v. Normal Corp.*, 223 Md. 260, 268, 164 A. 2d 457 (1960). The notice in the instant case did not meet this test.

We have often stated that administrative agencies "must observe the basic rules of fairness as to parties appearing before them." *Dickinson-Tidewater v. Supervisor*, 273 Md. 245, 253, 329 A. 2d 18 (1974); *Rogers v. Radio Shack*, 271 Md. 126, 129, 314 A. 2d 113 (1974); *Fairchild Hiller v. Supervisor*, 267 Md. 519, 524, 298 A. 2d 148 (1973); *Dal Maso v. Bd. of County Comm'rs*, 238 Md. 333, 337, 209 A. 2d 62 (1965). Even if there were no specific statutory requirement of notice, this principle would seem to require that adequate notice and opportunity to be heard be afforded in a case such as this. The Nonmonetary Determination notice failed to provide this element of fundamental fairness.

> *Judgment reversed; case remanded for proceedings not inconsistent with this opinion.*
> *Appellee to pay costs.*