513 A.2d 882

**Janice EVERETT**

v.

**BALTIMORE GAS AND ELECTRIC COMPANY et al.**

**No. 56, Sept. Term, 1985.**

Court of Appeals of Maryland.

Aug. 26, 1986.

Robert M. McCaig, Legal Aid Bureau, Inc., Baltimore, for Janice Everett, appellant.

Paul S. Buckley, Asst. People's Counsel (John K. Keane, Jr., Maryland People's Counsel, Thomas C. Gorak, Asst. People's Counsel), Baltimore, brief of amicus curiae Maryland People's Counsel.

Gregory V. Carmean, Acting People's Counsel, Thomas C. Gorak, Asst. People's Counsel and Paul S. Buckley, Asst. People's Counsel, Baltimore, reply brief of amicus curiae filed by Maryland People's Counsel.

Stephen J. Rosasco (Paul W. Davis, on brief), Baltimore, for appellee Baltimore Gas and Elec. Co.

Sandra Hall-Eckroade, Asst. General Counsel (Kirk J. Emge, General Counsel, on brief), Baltimore, for appellee Public Service Com'n of Maryland.

Argued before MURPHY, C.J., and SMITH,* EL-DRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

COLE, Judge.

We shall decide in this case whether a utility company may terminate a customer's service because the customer failed to pay for service at a prior address where she allegedly resided. We shall also decide whether the utility company or the customer bears the burden of proof in a service termination proceeding. Finally, we must determine the standard of proof that applies in the service termination proceeding at issue.

We set forth the facts giving rise to these questions as follows. Appellee, the Baltimore Gas & Electric Company (BG & E), proposed to terminate the service of appellant, Janice Everett, at 1600 Chilton Street. After Everett requested an explanation of the basis for the proposed termination, BG & E on May 7, 1981 wrote to Everett as follows:

---

* Smith, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

In reference to your inquiry, the following information is submitted.

We have evidence which we feel holds you responsible for $4242.60 in unpaid bills. Listed below are the addresses, amounts and time periods of those bills.

| Cut-in – Cut-out | | Address | Amount | Miscellaneous Charges |
|---|---|---|---|---|
| | 5/59 | 1737 Abbottation St. | $139.03 | $6.50 Court Cost |
| 7/73 – 3/74 | | 1520 Homestead St. | 207.95 | |
| 4/75 – 4/77 | | 508 E. 43rd St. | 691.25 | 6.00 Recon Chg. |
| 5/77 – 8/78 | | 508 E. 43rd St. | 1078.04 | |
| 8/78 – 5/79 | | 508 E. 43rd St. | 772.77 | 3.00 Recon Chg. |
| 5/79 – 9/79 | | 508 E. 43rd St. | 544.03 | |
| 9/79 – 5–80 | | 508 E. 43rd St. | 794.03 | |

If you dispute these billings, you do have the right to request a formal hearing by the Public Service Commission of the State of Maryland.

On June 4, 1981, Everett filed a complaint [1] against BG & E with the Public Service Commission. In her complaint, Everett asserted that she had never resided or had service in her name at any of the addresses listed in the letter. She asked that the Commission stay the proposed termination, that BG & E be prohibited from collecting the alleged debt, and that a hearing be held on the matter. After informal attempts to resolve the dispute failed, the Commission ordered BG & E to answer the complaint and referred the case to a hearing examiner pursuant to Maryland Code (1957, 1980 Repl.Vol.), Art. 78, §§ 20(b) and (c). In its answer to Everett's complaint, BG & E alleged that

between May 1977 and May 1980, Complainant resided at 508 E. 43rd Street and *fraudulently used* gas and electric service supplied from BG & E by (1) failing to contract for service in May 1977, (2) making application in a fictitious name or in the name of another family mem-

---

1. At some point after the issuance of BG & E's letter, Everett admitted responsibility and paid for the services provided at 1520 Homestead Street between 1973 and 1974. In addition, the Company withdrew its claim that she was responsible for service at 1737 Abbottston Street in 1969 and for service supplied at 508 E. 43rd Street between 1975 and 1977. Thus, the charges at issue, in the amount of $3,188.87, pertain to service extended at 508 E. 43rd Street between May of 1977 and May of 1980.

ber or occupant in August 1978, (3) failing to contract for service in May 1979 and (4) making application in a fictitious name or name of another family member or occupant in September 1979. BG & E further avers that Complainant is liable for such fraudulent use in the amount of $3,188.87 and that BG & E is entitled to terminate service for non-payment of said outstanding amount. [Emphasis supplied.]

On October 28, 1981, a hearing was held before a hearing examiner. At the outset of the hearing, Everett's counsel, relying upon the allegation of "fraudulent use" set forth in BG & E's answer, moved that the burden be placed on BG & E to "go forward and present proof to that effect rather than my client having to disprove an allegation for which no basis has yet been presented." In opposition to Everett's motion, BG & E contended that the answer's allegations of "fraudulent use" merely "tracked" the applicable regulation and that Everett, as the complaining party, bears the burden of proof as to facts necessary to establish her basis for relief. The hearing examiner, agreed with Everett, however, and granted her motion. BG & E proceeded to present its evidence, after which Everett presented evidence in rebuttal. BG & E's evidence indicated that Everett did reside at 508 E. 43rd Street during the period in question and that she did obtain service unlawfully at that address. On the other hand, Everett produced evidence that tended to show that she lived with her mother and brothers on Round Road, not at the 43rd Street address, during the relevant time period. According to her evidence, the house on 43rd Street was occupied by her daughter Janet, her grandchildren and a boarder.

The hearing examiner issued his proposed order on May 17, 1982. He concluded that the burden of proof should be borne by BG & E and that BG & E must satisfy this burden by clear and convincing evidence. Applying this standard, the hearing examiner found that the evidence was not "sufficiently reliable" in showing that Everett was living at the premises in question. Thus, he held that BG & E had

failed to satisfy the standard of proof and proposed that the utility company be prohibited from terminating service to Everett "on the basis of its claim of fraudulent use at 508 E. 43rd Street."

BG & E appealed to the Commission. In its final order issued on November 5, 1983, the Commission agreed with the hearing examiner as to the burden of proof, declaring that "where a utility seeks to terminate service for fraudulent use, the burden of proof shall be upon the utility to show the customer has engaged in such fraudulent use." The Commission disagreed, however, that the standard of proof should be clear and convincing evidence. Rather, the Commission determined the appropriate standard to be preponderance of the evidence. Applying the preponderance standard to the record before the examiner, the Commission concluded that BG & E met its burden of showing fraudulent use and that Everett was responsible for the disputed bills. Thus, the Commission dismissed her complaint.

Everett appealed the Commission's order to the Circuit Court for Baltimore City. BG & E also appealed that part of the Commission's order placing the burden of proof on the utility. The circuit court, in a memorandum opinion filed February 24, 1984, held that BG & E had the burden of proof and that the proper standard was clear and convincing evidence, not merely preponderance of the evidence. Thus, the court reversed the Commission's order and remanded the case to the Commission for further proceedings.

BG & E and the Commission appealed the circuit court's decision to the Court of Special Appeals. In *Baltimore Gas & Electric Co. v. Everett*, 61 Md.App. 288, 486 A.2d 248 (1985), the intermediate appellate court agreed with the Commission and the circuit court that the burden was on BG & E to justify the proposed termination. The Court of Special Appeals, however, disagreed with the prior rulings of the Commission and the circuit court as to the applicability of the fraudulent use regulation, COMAR 20.31.02.04.

Instead, the court declared "at issue was not the characterization of Everett's actions as fraudulent, but only whether they, or her alleged residence at that address, sufficed to make her liable for the charges." *Id.* at 296, 486 A.2d at 252. The court applied the preponderance of the evidence standard to the resolution of that issue and concluded that the Commission did not err in finding that BG & E had met its burden. Everett petitioned this Court to issue a writ of certiorari. Shortly thereafter, BG & E cross-petitioned, raising the question pertaining to the allocation of the burdens. We granted both petitions and issued a writ of certiorari.

## I

We begin by addressing the issue concerning the allocation of the burdens of proof. BG & E contends that the Commission failed to allocate the burdens in accordance with the procedures for handling complaints set forth in Article 78, § 77(a) and COMAR 20.07.03.02A.[2] BG & E asserts that these provisions impose on Everett, as com-

---

2. Art. 78, § 77(a) provides:

    *Complaint received by Commission; service on company.*—The Commission shall receive complaints from any person, in writing, setting forth the circumstances allegedly constituting a violation of the provisions of this article by any public service company. If the complaint on its face states such a violation or is deemed by the Commission to be deserving of explanation the Commission shall serve a copy on the public service company complained of, together with an order that the complaint be satisfied or answered in writing within a specified time.

COMAR 20.07.03.02A reads as follows:

    Upon receiving the complaint, the Commission shall consider whether or not in its judgment it is of such a nature as *prima facie* to admit of relief or to justify redress under the law. For this purpose, the Commission may make such *ex parte* investigation as it may deem proper. If the Commission is of the opinion that the complaint is not of the nature described, then the Commission shall notify the complainant, or his attorney, to this effect, and opportunity may be given the complainant to amend his complaint within a specified time. If the complaint is not amended so as to set forth a cause which in the judgment of the Commission *prima facie* admits of relief or justifies redress, then it shall be dismissed by the Commission.

plainant, the burden to plead a *prima facie* case or face dismissal. According to BG & E's argument, if Everett meets this burden, then the burden shifts to BG & E to rebut with evidence of "fraudulent use" or facts making Everett responsible for the bills in question. Further, BG & E contends that because Everett disputes the proposed termination on the ground that she never lived at the address in question, she bears the burden of persuasion as to where she resided during the relevant time period. In response, Everett asserts that the provisions relied upon by BG & E do not apply to her complaint and that BG & E, under the regulations governing termination of gas and electric service, bears the burden in service termination disputes. Along with Everett, Maryland People's Counsel (MPC), amicus curiae, contends that BG & E is misguided in its attempt to place the burden of proof on the customer. MPC argues that BG & E should bear the burden of proof because it desires to change the status quo and it alleges that Everett acted wrongfully. Further, MPC asserts that BG & E should bear the burden because it possesses the facts that prompted its allegation of fraudulent use.

The regulations set forth in Subtitle 31 of Title 20 of the Code of Maryland Regulations govern all terminations of electric service, gas service, or both, where the service is for residential use. COMAR 20.31.01.03c requires that the customer take the first step where the customer wishes to dispute the reasons for termination of his service. The customer shall first "contact the utility before contacting the Commission." COMAR 20.31.04.02 establishes procedures for the handling of disputes between the utility and the customer regarding a proposed termination of service. It provides, in pertinent part:

B. If there is a disputed bill rendered by a utility in accordance with its tariff as on file with the Commission or a dispute regarding a proposed termination, the utility shall immediately make such investigation as is required by the particular case and report the result to the customer.

C.  Pending the ultimate resolution of a dispute concerning a proposed termination, the customer's service may not be terminated.

\*     \*     \*     \*     \*     \*

E.  If, following the investigation into a disputed bill, the utility determines that the disputed service has been provided and the bill rendered pursuant to its tariffs on file with the Commission and to the requirements, orders, and regulations of the Commission, the utility shall inform the customer of this determination and may require full payment of the bill.

F.  In a dispute concerning a proposed termination, the utility shall permit the customer to dispute or correct the reason or reasons for the termination.  The utility shall make a decision regarding the dispute and shall promptly inform the customer of that decision.

G.  The customer may file a complaint with the Consumer Assistance Section of the Commission within 7 days of being notified by the utility of its determination.

H.  The complaint may be written or oral and shall contain, at a minimum, the following information:

(1) The name, address, and account number of the customer;

(2) The utility involved in the dispute;

(3) Either the disputed portion of the bill and the full amount of the bill, or the reason or reasons for the proposed termination;

(4) The reason for the dispute.

I.  A complaint made pursuant to this regulation may be dismissed and the utility may terminate the service if the Commission or its staff determines that the customer has not negotiated with the utility in good faith or that the customer has otherwise failed to comply with the provisions of this subtitle.

For purposes of these regulations, a "disputed bill" is defined as "a bill which is the subject of a bona-fide controversy between a customer and the utility regarding

any billing error, including, but not limited to, matters such as errors in computation, failure of the bill to reflect a payment or other credit, and *billing for service which the customer alleges was not used or was used by another person.*" COMAR 20.31.01.02B(3) (emphasis supplied).

It is clear that the Commission adopted these procedures for settling disputes as an alternative to the formal complaint provisions contained in § 77 and in the regulation promulgated thereunder, COMAR 20.07.03. The adoption of alternate procedures is consistent with the broad supervisory and regulatory powers given to the Commission under § 56 of the Public Service Commission Law. The differences between the formal complaint procedures and the service termination dispute procedures are readily apparent. Section 77 requires a written complaint, "setting forth the circumstances allegedly constituting a violation of the provisions of [the Public Service Commission Law] by any public service company." COMAR 20.31.04.02H, in contrast, provides that the complaint may be oral or written, and shall contain "the reason or reasons for the proposed termination" and "the reason for the dispute." Thus, we think it clear that the informality of the dispute procedures set forth in COMAR 20.31.04 evinces the Commission's intent to make itself, in its regulatory capacity, more accessible to the consumer where the vital services of gas and electricity are at stake.

Nevertheless, BG & E urges us to adhere to the formal requirements contained in § 77 and COMAR 20.07.03. Pointing to these provisions, BG & E asserts that Everett, the party disputing the proposed termination, bears the burden of pleading a *prima facie* case that "the utility has violated the Public Service Commission Law."

■ While we agree that Everett bears the initial burden of pleading, we do not agree that she must allege a violation of the Public Service Commission Law. As a customer disputing the proposed termination of her service, Everett bears the burden of alleging sufficient facts to show that a

bona fide dispute exists between her and the utility as to the proposed termination of service. In an analogous case, *Carter v. Suburban Water Co.*, 131 Md. 91, 101 A. 771 (1917), the plaintiff sought to enjoin termination of water service for non-payment of a bill on grounds that an irregular supply of water to houses owned by the plaintiff caused him damage. This Court held that

> [w]hile a public service company has the right to cut off a consumer's water supply for non-payment of recent and just bills for water rents, and may refuse to engage to furnish further supply until said bills are paid, the right cannot be exercised so as to coerce the consumer into paying a bill which is unjust or which the consumer in good faith and with show of reason disputes.

131 Md. at 94, 101 A. at 772 (quoting *Poole v. Paris Mountain Company*, 81 S.C. 438, 442, 62 S.E. 874, 877 (1908) ); *see also Surratt v. C & P Telephone Company*, 156 Md. 510, 514–15, 144 A. 495, 497 (1929).

In the instant case, Everett alleged in her complaint that she neither resided, nor had service in her name, at the address in question. This allegation clearly raised questions as to whether Everett should be held responsible for the unpaid bills at that address and whether BG & E's proposed termination of service at her current residence is justified. Therefore, we find that Everett has met her burden of alleging facts that show a bona fide controversy exists between the utility and the customer.

BG & E further contends that Everett "had the initial burden of going forward with evidence and had the burden of persuasion as to where she resided from May 1977 to May 1980." We disagree. At a hearing to determine the appropriateness of the proposed termination of a customer's service, the burden of going forward and the burden of persuasion rest on the utility to establish sufficient grounds to justify the proposed termination. This conclusion is in accord with public policy and our prior decisions. BG & E, as a regulated public utility, has an

affirmative duty to provide service to the public. *See* Art. 78, § 28(c). In order to discontinue service, it must have grounds for termination and must state those grounds in a notice sent to the customer prior to termination.[3] *See* COMAR 20.31.02.05C and COMAR 20.31.02.06C. As this Court demonstrated in its decision in *Carter, supra,* a utility does not have an absolute right to terminate service. Indeed, COMAR 20.31.04.02C evidences this fact by prohibiting the termination of the customer's service pending the ultimate resolution of the dispute. Where a bona fide controversy or dispute exists between the utility and the customer, the utility must show that the proposed termination is justified.

Moreover, we think that placing the burden of persuasion on the utility in a service termination hearing is consistent with basic common-law principles regarding the allocation of the burden of proof. Generally, the party seeking to change the status quo bears the risk of failure of proof or persuasion. *See McCormick on Evidence* § 337 (E. Cleary 3d ed. 1984). We see no reason to deviate from this general rule under the present facts, where the utility seeks to terminate the customer's access to the vital services of gas and electricity. In similar situations, other jurisdictions have reached the same conclusion. *See Montalvo v. Consolidated Edison Co. of New York,* 110 Misc.2d 24, 441 N.Y.S.2d 768 (1981); *Fay v. Miller,* 183 F.2d 986 (D.C.Cir. 1950); *Pennsylvania Publications, Inc. v. Pennsylvania Public Utilities Comm'n,* 349 Pa. 184, 36 A.2d 777 (1944). In the instant case, both the Commission and the circuit court ruled that the burden was on BG & E to justify the proposed termination. We hold that where a customer demonstrates a bona fide controversy or dispute as to a proposed termination of service, the utility bears the burden of going forward and the burden of persuasion in establishing sufficient grounds for termination.

---

**3.** Under certain circumstances not at issue here, a utility may terminate service without notice. COMAR 20.31.02.03.

## II

■ Having decided the proper allocation of the burden of proof, we turn next to determine the standard by which this burden must be met. Both the Commission and the Court of Special Appeals concluded that preponderance of the evidence is the correct standard to be applied in this proceeding. We disagree.

At the outset, it is necessary to examine closely the nature of the dispute between the parties. Here, the utility is not seeking to terminate Everett's service because the service at her present premises is used in a fraudulent manner.[4] Rather, the utility seeks to terminate Everett's present service on the ground that she fraudulently obtained service for which she has not paid at a prior address. We explain the significance of this distinction.

Ordinarily, a customer is fully and ultimately liable for all bills for service provided to him. COMAR 20.31.01.03D. His failure to live up to this obligation subjects him to termination action by the utility. *Id.* A "customer," however, is defined as "a person receiving service from a utility, *in whose name the account is maintained,* for use in the premises." COMAR 20.31.01.02B(2) (emphasis supplied). Under the facts of the instant case, it is undisputed that the accounts in question were not maintained in Everett's name. Therefore, Everett's responsibility for the unpaid bills cannot be premised on any express contractual obligation to the utility as a "customer." Instead, BG & E bases Everett's liability upon a different theory. The utility alleges that Everett is responsible for the unpaid bills because she "resided at 508 E. 43rd Street and fraudulently used gas

---

**4.** COMAR 20.31.02.04A provides that "[e]lectric service or gas service, or both, may be terminated in accordance with this regulation if it is determined by the utility that the service *at the premises* is used in a fraudulent manner." (Emphasis supplied.) As the Court of Special Appeals correctly noted, BG & E seeks to terminate Everett's service at her current address, not "at the premises" where the alleged fraudulent use occurred. Thus, COMAR 20.31.02.04 is not directly at issue in this case.

and electric service supplied by BG & E by (1) failing to contract for service in May 1977, (2) making application in a fictitious name or in the name of another family member or occupant in August 1978, (3) failing to contract for service in May 1979 and (4) making application in a fictitious name or names of another family member or occupant in September 1979." Thus, the issue is whether BG & E must prove these allegations by a preponderance of the evidence or by a more exacting standard, clear and convincing evidence.

Two of BG & E's charges against Everett pertain to her alleged use of a fictitious name in applying for service. Upon examination of these charges, it is clear that they amount to an allegation of fraud. To prove fraud in Maryland, the party alleging it must show: (1) that a false representation was made by a party; (2) that its falsity was known to that party or that the misrepresentation was made with such reckless indifference to truth as to impute knowledge to the party; (3) that the misrepresentation was made for the purpose of defrauding some other person; (4) that the person not only relied on the misrepresentation but had a right to rely upon it with full belief in its truth, and that the person would not have done the thing from which the damage resulted if the misrepresentation had not been made; and (5) that the person suffered damage directly resulting from the misrepresentation. *Suburban Prop. Management, Inc. v. Johnson,* 236 Md. 455, 460, 204 A.2d 326, 329 (1964); *Fowler v. Benton,* 229 Md. 571, 578–79, 185 A.2d 344, 349 (1962); *Buschman v. Codd,* 52 Md. 202, 207 (1879). *See Martens Chevrolet v. Seney,* 292 Md. 328, 333, 439 A.2d 534, 537 (1982). The party alleging fraud must prove it by clear and convincing evidence. *See Peurifoy v. Congressional Motors, Inc.,* 254 Md. 501, 517, 255 A.2d 332, 340 (1969); *Bachrach v. Washington United Cooperative, Inc.,* 181 Md. 315, 321, 29 A.2d 822, 824 (1943); *See also Loyola Fed. S & L v. Trenchcraft,* 17 Md.App. 646, 655–59, 303 A.2d 432, 437–39 (1973). In the instant case, BG & E alleges that Everett obtained service for her use by applying for service in the name of her three year-old grand-

daughter and by using a fictitious name. According to the company's assertions, Everett used these ploys to obtain service because she knew she could not obtain service in her own name. Further, the company relied on these names in extending service to 508 E. 43rd Street. BG & E's allegations, if proved, meet all the requisites of common law fraud and, therefore, must be proved by clear and convincing evidence.

As to BG & E's other two allegations, the utility charges that on two occasions after service had been denied for non-payment, Everett's service was restored without BG & E's knowledge or permission. Such unauthorized use of service constitutes a crime in Maryland under Maryland Code (1957, 1982 Repl.Vol.), Art. 27, § 192. Thus, the conduct alleged by BG & E amounts to an allegation of a crime.

Although the preponderance of the evidence standard is generally applied in both civil cases and administrative proceedings, certain cases require a more exacting standard because of the seriousness of the allegations. *See McCormick, supra,* at 959. In *First Nat'l Bk. v. U.S.F. & G Co.,* 275 Md. 400, 340 A.2d 275 (1975), the First National Bank of Southern Maryland brought an action against U.S.F. & G. based on a fidelity bond. The bank allegedly incurred losses as a result of the fraudulent and dishonest conduct of one of its employees. The bank alleged that the employee's conduct fell within the provisions of the bond, which covered, among other things, "any loss through any dishonest, fraudulent or criminal act of any of the employees" of the bank. After the trial court found in favor of U.S.F. & G., the bank appealed to this Court. As to the bank's allegations that the employee's conduct was fraudulent, Judge O'Donnell, writing for the Court, declared, when fraud or dishonesty is imputed, "something more than a mere preponderance of the evidence must be produced, the proof must be 'clear and satisfactory' and be of such a character as to appeal strongly to the conscience of the court." *Id.* at 411, 340 A.2d at 283 (citing *Peurifoy v. Congressional*

*Motors, Inc.,* 254 Md. 501, 517, 255 A.2d 332, 340 (1969); *Bacharach v. Washington United Cooperative, Inc.,* 181 Md. 315, 321, 29 A.2d 822, 825 (1943); *Rent-A-Car Co. v. Fire Insurance Co.,* 161 Md. 249, 268, 156 A. 847, 855 (1931) ). *See also Corner v. Pendleton,* 8 Md. 337, 346–47 (1855).

In *Rent-A-Car Co. v. Fire Ins. Co., supra,* the Rent-A-Car Company sued its insurance company after the insurer refused to pay a loss. In its defense, the insurance company alleged that Rent-A-Car intentionally started the fire that caused the loss in order to defraud the insurer. This Court reversed a jury instruction that employed the preponderance standard with respect to the insurance company's defense. The Court held that

> [u]pon the facts of this case that prayer was insufficient and misleading. The defense in this case amounted to a charge that the appellant, its officers and employee, had committed a serious criminal offense. In such cases the rule in England is that even in civil cases something more than a mere preponderance of evidence is required to establish guilt and, whatever the law may be elsewhere, that appears to be the law of this state.

*Id.* at 267, 156 A. at 855 (citations omitted). Thus, where allegations involve fraud or criminal conduct, something more than a preponderance of the evidence may be required in proving these charges.

Nonetheless, BG & E and the Commission contend that the application of a higher standard of proof is not appropriate in an administrative proceeding such as the one at issue in this case. In support of its argument, BG & E points to *Bernstein v. Real Estate Comm'n,* 221 Md. 221, 156 A.2d 657 (1960), in which this Court, for the first time, addressed the provisions of Maryland's Administrative Procedure Act (APA). The case involved two complaints filed with the Real Estate Commission against two real estate brokers. The Commission made findings adverse to the brokers and temporarily suspended their licenses. In reviewing the administrative proceedings conducted by the Real Estate

Commission under the APA, this Court noted that "[w]ith respect to the weight of the evidence, it is true, of course, that a mere surmise or conjecture that it was sufficient would not be enough. The comparative degree of proof by which a case must be established is the same in an administrative as in a civil judicial proceeding, *i.e.*, a preponderance of the evidence is necessary, but proof beyond a reasonable doubt is not required." *Id.* at 232, 156 A.2d at 663. (citing 42 Am.Jur., *Public Administrative Law,* § 132.). BG & E reads *Bernstein* as requiring the application of the preponderance standard in an administrative proceeding. In response, Everett asserts that *Bernstein* requires the agency to look to the standard of proof applied in civil cases to determine the standard to be applied in similar administrative proceedings. We find Everett's reading of the case to be persuasive. In light of the sentence that precedes the reference to the preponderance standard, it is clear that *Bernstein* establishes preponderance of the evidence as the *minimum* degree of proof required in administrative proceedings. *Bernstein* does not, contrary to BG & E's argument, preclude the use of a higher standard of proof under certain circumstances. Moreover, the Administrative Procedure Act, which was at issue in the *Bernstein* case, expressly provides that its requirements are not applicable to proceedings of the Public Service Commission. *See* Maryland Code (1984), § 10–202(a)(3)(vii) of the State Government Article. Thus, *Bernstein* is of questionable value in determining the proper standard of proof to be employed in the instant case.

BG & E and the Commission also argue that "special policy considerations" militate against application by the Commission of a higher standard of proof. They assert that "[f]or the Commission to adopt the clear and convincing standard would require it to turn its back on its primary statutory obligation [to protect the public] and to sanction both fraudulent use of utility service and ratepayer subsidization of fraudulent users." We disagree. First, no evidence in the record suggests that the adoption of the clear

and convincing evidence standard will affect the rates. Second, while we recognize the legitimate goal of keeping rates at the lowest possible level, this goal does not override the fundamental aim of assuring that consumers of gas and electric service are treated fairly in service termination proceedings, especially where the utility bases the consumer's liability on an allegation of fraud and criminal conduct.

■ In sum, where a utility alleges that a customer engaged in conduct amounting to fraud or to a crime and such conduct constitutes the sole basis of the customer's alleged responsibility for prior unpaid bills, the utility must prove its allegation by clear and convincing evidence to justify termination of service for non-payment.

## III

Everett also asks whether a utility may terminate service to a customer on the ground that the customer previously resided at an address where service was extended without payment. Everett raises this question because the opinion of the Court of Special Appeals indicated that the Commission's finding that Everett resided at 508 E. 43rd Street constituted sufficient justification to hold Everett liable for the unpaid gas and electric bills and to terminate service at her current residence based on nonpayment of those bills. In short, nothing in the Public Service Commission Law or in the applicable service termination regulations [5] justifies liability or termination of service on the basis of residence alone.

At oral argument and in its brief, BG & E made reference to a so-called "family unit rule" as an alternate theory of liability against Everett. This "rule" is apparently an unwritten policy of the Commission. A brief examination of

---

5. On April 21, 1986, the Commission adopted a revised version of COMAR 20.31.02.04, the termination regulation dealing with "fraudulent use." In revising the regulation, the Commission deleted all references to "fraudulent use" and expanded the number of situations in which service may be terminated.

its genesis will assist in understanding its meaning and operation. An unreported bench opinion of the Commission in *Waite v. BG & E,* Case No. 6089 (Md.Pub.Ser.Comm'n, February 15, 1967) constitutes the source of the rule. In *Waite,* Mr. Waite and Mrs. Griever had lived together at 5329 Todd Avenue, with services listed in Mrs. Griever's name. Later, they moved to 5410 Sarril Road without paying for the service rendered at their previous address. Mr. Waite then obtained service at the Sarril Road residence in his own name. A bench opinion rendered by the Commission's chairman concluded as follows:

> It is the finding of the Commission further that to all intents and purposes the family unit as it existed on Todd Avenue is the same as the family unit that now exists on Sarril Road. That under those circumstances the mere fact that the account was opened in the name of Mr. Waite rather than Mrs. Griever does not change the situation; and that the Company is justified under its tariff provisions as filed before the Commission in refusing to continue the service to Mr. Waite unless the bill which is owed by Mrs. Griever is paid. This is based not only on the prior rulings by this Commission but on the law as we understand it. . . .

Thus, the "family unit rule," as embodied in the *Waite* decision, permits the termination of a customer's service where a prior bill attributable to the "family unit" is outstanding and the customer constitutes a member of the "family unit." While the term "family unit" was not defined in the bench opinion, BG & E's counsel, at oral argument in the instant case declared that the rule itself is not limited to relatives, because "marriages, as you know, are not as popular as they used to be." [6]

---

6. We note that the *new* version of COMAR 20.31.02.04 addresses the situation found in *Waite v. BG & E.* Subsection 4 of the revised regulation provides for termination if:

> (6) Application was made for connection of service to a dwelling unit where there are co-occupants, if the service account at a prior dwelling unit of the applicant was listed in a current co-occupant's

■ We have often stated that administrative agencies must "observe the basic rules of fairness as to parties appearing before them." *Schultz v. Pritts*, 291 Md. 1, 7, 432 A.2d 1319, 1323 (1981); *Ottenheimer Pub. v. Employ. Sec. Adm.*, 275 Md. 514, 520, 340 A.2d 701, 704 (1976); *Dickinson-Tidewater v. Supervisor*, 273 Md. 245, 253, 329 A.2d 18, 24 (1974); *Rogers v. Radio Shack*, 271 Md. 126, 129, 314 A.2d 113, 115 (1974). If this requirement of fairness means anything, it means that an agency must give to the public notice of, and access to, its own rules and regulations prior to an attempt to enforce them. *See Washington Gas v. Aetna Casualty*, 250 Md. 325, 331, 242 A.2d 802, 805 (1967). Here, the Commission gave no notice of the "family unit rule" to its customers.

In light of our conclusion that the Commission applied the incorrect standard of proof, we need not address Everett's final question as to whether substantial evidence existed to support the Commission's decision. Instead, we remand the case to the Commission so that the proper standard of proof may be applied.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY. BALTIMORE GAS & ELECTRIC TO PAY THE COSTS.

---

name, and the co-occupant has failed to pay an outstanding bill or undisputed portion of a disputed bill for service at the prior dwelling unit, the collection of which is not barred under applicable State or federal law.

The new version, however, was not adopted until five years after BG & E initiated its attempt to terminate Everett's service.