Filed: February 17, 1999

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 98-1155
(CA-96-3970-JFM)

Venture Media Limited Partnership,

Plaintiff - Appellant,

versus

Colt's Plastics Company, Incorporated,

Defendant - Appellee.

O R D E R

The court amends its opinion filed January 12, 1999, as follows:

On the cover sheet, section 7, line 3 through page 2, line 1 -- the attorneys listed as "on brief" for Appellant are deleted.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

VENTURE MEDIA LIMITED
PARTNERSHIP,
<u>Plaintiff-Appellant,</u>

v.                                                                      No. 98-1155

COLT'S PLASTICS COMPANY,
INCORPORATED,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-96-3970-JFM)

Argued: October 28, 1998

Decided: January 12, 1999

Before ERVIN and HAMILTON, Circuit Judges, and
MOON, United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael David Fraidin, Baltimore, Maryland, for Appel-
lant. George J. Kelly, Jr., SIEGEL, O'CONNOR, SCHIFT & ZAN-
GARI, P.C., Hartford, Connecticut, for Appellee. **ON BRIEF:**

David D. Gilliss, NILES, BARTON & WILMER,
Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Venture Media Limited Partnership (Venture) appeals the district
court's grant of summary judgment in favor of Colt's Plastics Com-
pany, Inc. (Colt). For the reasons that follow, we now affirm.

I.

Venture sells cosmetic products through direct-response marketing.[1]
Colt manufactures and sells plastic containers for cosmetic products.

In 1994, Venture approached Colt seeking to purchase plastic con-
tainers for its line of cosmetic products. Meetings were held between
representatives of both Colt and Venture, and the key decisionmakers
for each company discussed the nature of Venture's business, the
nature of Colt's business, how the two companies could work
together, and whether Colt could supply containers to meet the pro-
jected volume of business anticipated from Venture's direct-response
marketing campaign. According to Venture, credit terms were a large
part of the discussions at these meetings and a primary factor in its
decision to place orders with Colt. When all of these issues were set-
tled, Venture began placing orders with Colt.

In its business, Colt uses a number of forms including a Quota-
tion/Proposal Form (Proposal Form) and an Invoice Form (Invoice).

_____

[1] Direct-response marketing is the sale of goods through television and
other media advertisements with delivery of the goods on an agreed date.

2

Colt's Proposal Form, which contains prices, is sent to all prospective purchasers. Copies of the Proposal Form were sent to Venture on numerous occasions. The back of the Proposal Form lists eighteen "General Conditions." (J.A. 375). Of these eighteen, eight are relevant to one or more of the issues on appeal. The first relevant condition states: "This quotation supersedes all previous quotations, and if accepted supersedes all previous agreements relating to the subject matter hereof." Id. The second relevant condition states: "This proposal may be accepted only by written purchase order. . . ." Id. The third relevant condition states: "Shipping dates are approximate and established on the basis of normal conditions and continuous production." Id. The fifth and sixth relevant conditions state that there are no warranties except a warranty of "good and workmanlike quality" and that any claims for defects are waived unless "made within 30 days after receipt of merchandise." Id. The seventh relevant condition states that, at any time, Colt "may alter the credit terms herein stated . . . ." Id. The eighth relevant condition establishes that the Proposal Form's terms are controlling and supersede conflicting terms, unless those conflicting terms are agreed to in writing by Colt.

Between 1994 and September 1995, Venture ordered from Colt, and Colt manufactured and shipped, plastic containers for Venture's cosmetic products. In conformity with the Proposal Form's terms, Venture placed orders with Colt using a purchase order. After manufacturing and shipping the plastic containers requested in the various purchase orders, Colt sent an Invoice to Venture requesting payment. The Invoice stated that payment was "due 30 days from the [I]nvoice date," and "amounts 30 days past due [were] subject" to twelve percent annual interest. (J.A. 380). This period of time passed with the two companies transacting business without incident.

However, in August and early September 1995, Venture felt as if there were problems. The deliveries were arriving late, and Colt refused to increase Venture's line of credit. To resolve these issues, Venture requested a meeting with Colt. At this meeting, Colt assured Venture it would resolve the concerns raised by Venture.

Based on these assurances, on September 21, 1995, Venture sent a purchase order to Colt for plastic containers totaling $339,996.25. The purchase order specified exact quantities, exact prices for each

3

quantity, and the total price.[2] In addition, the purchase order explicitly specified the location where the products should be shipped and stated: "Please notify us immediately if this order cannot be shipped complete on or before 11/03/95." (J.A. 411). Colt never sent an acknowledgment to Venture but began to manufacture the plastic containers requested in the purchase order.

Between late February and early March 1996, Colt shipped plastic containers aggregating $47,922.18 to Venture in a series of shipments. Colt also sent Invoices for each shipment to Venture. Venture never paid Colt for these deliveries and did not give notice to Colt of any defects in the delivered goods within the thirty-day period required by the Proposal Form. Colt continued to manufacture plastic containers totaling $122,799.59 after the deadline date for delivery specified in Venture's purchase order. Because of the outstanding balance owed by Venture, Colt never shipped these plastic containers to Venture. Colt sold what it could of these products to third parties, but because these plastic containers were specially manufactured for Venture, they were difficult to sell on the open market. Consequently, Colt continues to hold in its inventory $108,793.84 in plastic containers manufactured for Venture.

On December 30, 1996, Venture filed this suit against Colt in the Circuit Court of Maryland for Baltimore County alleging: (1) breach of contract; (2) fraud; (3) negligence; (4) intentional misrepresentation; and (5) negligent misrepresentation. Colt removed the case to the United States District Court for the District of Maryland based on diversity jurisdiction. See 28 U.S.C. § 1332. Colt filed a counterclaim alleging breach of contract and seeking $47,922.18 plus interest for the plastic containers sent to Venture and $108,793.84 for the plastic containers specially manufactured for, but not sent to, Venture.

Both parties moved for summary judgment with respect to all claims. The district court granted Colt's motion for summary judgment, and therefore, entered judgment in favor of Colt on Venture's claims and on Colt's counterclaim. Venture noticed a timely appeal. On appeal, Venture contends the district court erred when it granted

_____

**2** The prices and unit codes used by Venture in the purchase order came from forms, including the Proposal Forms, sent to Venture by Colt.

4

summary judgment in favor of Colt on Venture's breach of contract and fraud claims and Colt's breach of contract counterclaim.**3**

II.

Initially, Venture contends that the district court erred in granting summary judgment in favor of Colt on its breach of contract claim and on Colt's counterclaim for breach of contract. The parties agree that a contract existed for the sale of plastic containers amounting to $339,996.25, but vigorously dispute which terms control the sale. According to Venture, a $339,996.25 contract for plastic containers was formed when it sent its purchase order to Colt and Colt began to manufacture the plastic containers. Venture further maintains that Colt breached the contract by: (1) delivering defective plastic containers; (2) delivering damaged plastic containers; (3) failing to deliver the plastic containers by the agreed upon dates; (4) failing to extend Venture a volume purchase discount; and (5) failing to extend Venture's line of credit. In response, Colt contends that a $339,996.25 contract for plastic containers was formed when Colt sent its Proposal Form to Venture and Venture sent its purchase order to Colt. According to Colt, Venture breached the contract when it failed to make payment for the plastic containers that were manufactured and delivered to Venture. Colt further maintains that it never breached its contract with Venture because the plain language of the Proposal Form disposes of Venture's breach of contract allegations.

The district court granted summary judgment in favor of Colt on Venture's breach of contract claim, concluding that a contract was formed when Colt sent the Proposal Form to Venture and Venture sent the purchase order for $339,996.25 of plastic containers to Colt. Further, the district court concluded that Venture breached the contract when it failed to make payment for the plastic containers that Colt manufactured and delivered to Venture. Finally, the district court concluded that Colt did not breach its contract with Venture because the plain language of the Proposal Form was dispositive of Venture's breach of contract allegations. We review the district court's grant of

_____

**3** Venture does not appeal the district court's grant of summary judgment in favor of Colt on its negligence, negligent misrepresentation, and intentional misrepresentation claims.

5

summary judgment in favor of Colt <u>de novo</u>, employing the same standards applied by the district court. <u>See Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.</u>, 32 F.3d 120, 123 (4th Cir. 1994).

The parties agree that Venture's breach of contract claim and Colt's counterclaim for breach of contract are governed by Article Two of the Uniform Commercial Code as adopted by the State of Maryland (the Code). <u>See</u> Md. Code Ann., Commercial Law Article, §§ 2-101 through 2-725 (hereinafter cited as U.C.C.). The Code regulates the sale of goods between merchants like Venture and Colt. <u>See</u> U.C.C. § 2-104.

The Code does not define what constitutes a valid contract, so we must look to Maryland common law in this regard. <u>See</u> U.C.C. § 1-103. Under Maryland common law, a valid contract has three elements: the offer, the acceptance and consideration.[4] <u>See Sheeskin v. Giant Food</u>, 318 A.2d 874, 881 (Md. 1974).

The Code does not define what constitutes an offer; therefore, for such a definition, we look to Maryland common law. <u>See</u> U.C.C. § 1-103; <u>Maryland Supreme Corp. v. Blake Co.</u>, 369 A.2d 1017, 1023 (Md. 1977). Under Maryland common law, an offer is "an expression by the offeror . . . that something over which he at least assumes to have control shall be done or happen or shall not be done or happen if the conditions stated in the offer are complied with." <u>Id.</u> An offer must be definite and certain. <u>See Peoples Drug Stores v. Fenton</u>, 62 A.2d 273, 275 (Md. 1948). Further, the intention of the parties is one of the primary factors when deciding whether an offer was made. Therefore, the facts and circumstances of each particular case are crucial. <u>See Maryland Supreme Corp.</u>, 369 A.2d at 1024.

In this case, Colt's Proposal Form was an offer. From 1994 through September 1995, Venture placed purchase orders with Colt for various plastic containers. Throughout this period, Colt sent numerous Proposal Forms to Venture. The Proposal Form explicitly sought acceptance by means of a purchase order. In conformity with this condition, Venture placed all of its orders by means of a purchase order.

_____

**4** There is no issue raised by either party regarding valid consideration.

6

Venture always abided by Colt's terms and never objected to them. Accordingly, we agree with the district court that Colt's Proposal Form was an offer made to Venture. See id.

The Code states that once a certain and definite offer is made, acceptance may be made in any manner that is reasonable. See id. at 1025. However, an offeror may be particular about the appropriate means of acceptance. See U.C.C. § 2-207. Here, Colt's Proposal Form was explicit: the proposal "may be accepted only by written purchase order." (J.A. 375). Venture abided by this requirement when it submitted its purchase order on September 21, 1995, accepting Colt's offer, thus creating a binding contract between the two companies under the terms of Colt's Proposal Form.**5** See Maryland Supreme Corp., 369 A.2d at 1023.

Having determined that Colt's Proposal Form constituted a valid offer and Venture's purchase order constituted a valid acceptance, thereby creating an enforceable contract, we agree with the district court that the contract's terms are dispositive of Venture's breach of contract claim.**6** Accordingly, for the reasons stated above, the district

_____

**5** We note that Venture's purchase order contained terms additional to or different from those contained in Colt's Proposal Form. Under the Code, these "additional terms are to be construed as proposals for addition to the contract." U.C.C. § 2-207(2)(a). However, between merchants such terms become part of the contract unless "[t]he offer expressly limits acceptance to the terms of the offer." Id. Here, Colt expressly limited acceptance to the terms of the offer, i.e., the Proposal Form. Once Venture failed to limit its acceptance by making its acceptance expressly conditional on "assent to the additional or different terms," U.C.C. § 2-207(1), the terms contained in Colt's Proposal Form governed the sale of the plastic containers.

**6** To the extent Venture claims that Colt breached the contract between them by: (1) delivering defective plastic containers; (2) delivering damaged plastic containers; (3) failing to deliver the plastic containers by the agreed upon dates; (4) failing to extend Venture a volume purchase discount; and (5) failing to extend Venture's line of credit, we conclude that the terms of the contract dispose of these allegations. As to Venture's claim that Colt delivered damaged or defective goods, the contract, i.e., the Proposal Form(s) as the offer and the purchase order(s) as the accep-

7

court appropriately granted summary judgment in favor of Colt on Venture's breach of contract claim.

Turning to Colt's counterclaim for breach of contract, the district court awarded Colt $47,922.18 plus $7,524.50 in interest for the plastic containers Colt manufactured and shipped to Venture. Because Venture accepted the shipment, did not object to the quality, and did not make payment, Colt was entitled to summary judgment on its counterclaim for these damages. See U.C.C.§ 2-709. Further, because the explicit terms of the Invoices sent to Venture by Colt allow interest at a twelve percent annual rate beginning sixty days after the date the Invoice was due, the district court correctly awarded the sales price and interest to Colt in the total amount of $55,446.68.

Colt is also entitled to damages for the plastic containers that it manufactured specifically for Venture. The aggregate contract price for these plastic containers is $122,799.59. Colt has sold some of these containers on the open market but still has $108,793.84 of the plastic containers manufactured for Venture in its inventory. The district court correctly awarded this amount to Colt. See U.C.C. § 2-709(1)(b); Metalcraft, Inc. v. Pratt, 500 A.2d 329, 336 (Md. 1985).

We conclude that the district court properly granted summary judgment in favor of Colt on Colt's counterclaim for breach of contract. The district court properly awarded Colt: (1) $55,446.68 (sales price and interest) for the plastic containers delivered to Venture; and (2) $108,793.84 for the plastic containers that Colt specially manufactured for Venture and has been unable to sell on the open market.[7]

_____

tance, states that any claims for damaged or defective plastic containers are waived unless notice is given to Colt within thirty days. It is undisputed that Venture never provided Colt with notice within thirty days. As to Venture's claim that Colt failed to deliver the plastic containers by the agreed upon dates, the contract explicitly states that "[s]hipping dates are approximate . . . ." (J.A. 375). Finally, as to the claim that Colt failed to extend Venture a volume purchase discount and an increased line of credit, the contract is clear that it supersedes all previous agreements.

[7] Colt does not dispute that, upon satisfaction of the judgment, Venture is entitled to receive the plastic containers [totaling $108,793.84] Colt specially manufactured for Venture; Colt has been unable to sell these containers on the open market and they remain in Colt's inventory.

8

III.

Venture also contends that the district court erred in granting summary judgment in favor of Colt on its fraud claim. Venture's fraud claim is based on statements allegedly made by representatives of Colt. According to Venture, it is entitled to recover for fraud because representatives of Colt made assurances, during the various meetings that the parties held prior to and during their contractual relationship, that Colt: (1) was capable of manufacturing the quantities that Venture wanted; (2) could meet the shipping deadlines; and (3) would increase Venture's line of credit. We disagree.

Under Maryland law, in order to establish a fraud claim, Venture must show:

> (1) that the representation made is false;
>
> (2) that its falsity was either known to the speaker, or the misrepresentation was made with such reckless indifference to truth as to be equivalent to actual knowledge;
>
> (3) that it was made for the purpose of defrauding the person claiming to be injured thereby;
>
> (4) that such person not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and that he would not have done the thing from which the injury resulted had not such misrepresentation been made; and
>
> (5) that he actually suffered damage directly resulting from such fraudulent misrepresentation.

Martens Chevrolet v. Seney, 439 A.2d 534, 537 (Md. 1982) (emphasis added); see also Everett v. Baltimore Gas & Elec., 513 A.2d 882, 889 (Md. 1986).

Venture fails to establish the fourth element of a claim for fraud. As part of the contract between the parties, the Proposal Form is, by

9

its own terms, the controlling document that "supersedes all previous agreements." (J.A. 375). In light of this language in the Proposal Form, Venture could not have reasonably relied upon oral statements made by representatives of Colt prior to or during the contractual relationship which differed from the terms of the Proposal Form. See Alleco, Inc. v. Weinberg Found., 665 A.2d 1038, 1048 (Md. 1995); Appel v. Hupfield, 84 A.2d 94, 96 (Md. 1951). Accordingly, we affirm the district court's grant of summary judgment in favor of Colt on Venture's fraud claim.

IV.

For the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED

10